THE STATE, EX REL. CHAPMAN, *v.* LESSER, DIRECTOR OF PUBLIC SAFETY.

*Civil service — Municipal — Removals — Sufficiency of charges — Judgment of commission final, when — Rescission of order and reinstatement of officer — After another appointed from eligible list — Validity of appointment from incomplete eligible list — Reinstatement of removed officer — Section 486-16, General Code (103 O. L., 706), inapplicable, when.*

1. A charge that an officer collected money belonging to a city and failed, neglected and refused to pay the same into the city treasury, charges gross neglect of duty on the part of the officer and is a reasonable and just cause for his removal from office.

2. Where the jurisdiction of a municipal civil service commission is properly invoked by the temporary suspension of an officer by the mayor and the filing, by the mayor with the commission, of any of the charges named in the statute, which charges if true would authorize a dismissal from service, the judgment of the civil service commission is final.

3. Where the charges filed by the mayor are sustained upon hearing by the civil service commission, and that commission orders that the suspension be made permanent, and later directs that a civil service examination be held to determine the fitness of applicants for that position, and in pursuance of such order

Statement of the Case.

a civil service examination is held and a list of persons eligible
to the appointment is submitted to the mayor, who thereupon
permanently appoints a person named in the eligible list, the
jurisdiction of the civil service commission is exhausted and it
has no power thereafter, upon motion of the deposed officer
or otherwise, to open up and rescind its former order and
reinstate him in the office already filled in pursuance of civil
service requirements.

4. The appointing authority may demand that the civil service
commission certify a list containing at least three names, be-
fore making an appointment, but where a list is submitted con-
taining less than three names and the appointing authority
accepts the list and makes the appointment, such appointment
is valid.

5. The second paragraph of Section 486-16, General Code, has no
application to an officer separated from the service by an order
of the civil service commission upon charges of delinquency or
misconduct on his part filed by the mayor, where such civil
service commission has found and declared that any one or
more of such charges are true, and upon such finding orders
that his suspension be made permanent.

(No. 15146 — Decided July 1, 1916.)

IN MANDAMUS.

This cause was submitted to this court upon the
pleadings and an agreed statement of facts, from
which the following appears:

On October 14, 1912, Frederick W. Bertsch was
appointed chief of the fire department of the city
of Jackson, Ohio, and continued to perform the
duties of that office up until the 15th day of June,
1915, at which date the mayor of Jackson sus-
pended him from office and filed with the civil
service commission of that city his reason for so
doing.

On the 21st day of June, 1915, the civil service commission heard the charges against Bertsch and ordered that the suspension be made permanent; and on the 10th day of July, 1915, notified Bertsch in writing of the order so made.

On the 9th day of August, 1915, there was entered on the minutes of the civil service commission the following finding with reference to the charges filed against Bertsch:

"We find:

"Under charge No. 1.  Failure to pay over to the city money collected from the Superior Colliery Co. for the use of fire engine at Superior No. 9 Mine last August (1914).  By the admission of counsel for the defense, allowed to be written into the records it was proven that F. W. Bertsch rendered a statement to the Superior Colliery Co. for services rendered at the fire at Superior No. 9 at the time the city equipment was there.

"F. W. Bertsch admitted that on said occasion he used the fire engine and Fire Hose of the City of Jackson for 3 days at said mine.  Mr. Bertsch further testified that he received the sum of $200 from the Superior Colliery Co. for said services and that no part of said sum of $200 was turned into the treasury of the City of Jackson, nor paid to any proper authority of said city.

"Safety Director Harry McGuire testified that F. W. Bertsch took the City Fire Equipment and went to No. 9 mine by his orders.

"Wm. Nail, Driver of the City Fire Department testified that he was ordered by Fire Chief Bertsch

to go with the equipment — Fire Engine and Reel to said No. 9 Mine in Aug. 1914, and assisted in using the same for 3 days.

"Mr. Nail further testified that 'he was supposed to be working for the City of Jackson at that time', and that Mr. Bertsch gave him $65.00 in January, 1915, and when asked why he received the money, answered, 'It was given to me; that's all I know.'

"Mr. Nail further testified that he was paid in full for every day in Aug. 1914, by the City of Jackson.

"We find from the evidence that Mr. Bertsch as Fire Chief and Mr. Nail as Fireman were both paid their regular salaries in full for the month of August, 1914, including the time they were out of the city at the No. 9 Mine and it seems clear they were in the service of and acting in their official capacity for the City of Jackson, or they would not have charged for nor accepted pay from the City of Jackson for the days they were out of the City and engaged at the No. Nine (9) Mine.

"We cannot conclude that Mr. Bertsch was acting in his individual capacity. He left the city under directions of the Director of Public Safety, who has charge of the Fire Dept. He was Chief of the Dept., at the time and continued to act as Chief on his return. He ordered one of his subordinates to accompany and assist him, acting throughout as Chief of the Fire Dept. and we cannot concede that Mr. Bertsch can lay aside his official capacity and resume it at will.

"We assume that when the Chief of the Fire Dept., leaves the Engine house with the fire fight-

ing equipment, he is in charge as Chief until his return or until he turns it over to his successor.

"We further find from the evidence that the call for aid was not made by a sister City in a position to reciprocate should circumstances require a return of the favor, but the call came from an employe of a private corporation.

"The fire was not in the City of Wellston, but in a coal mine eight or nine miles beyond that City and 18 or 20 miles from Jackson.

"No lives were in danger and we are not sure that Dept. should have responded by taking the engine and reel and a fireman whose duties required his presence daily at the engine house, away from the City.

"No substitute was provided for an Assistant Chief or for fireman Nail, and the fire Dept. was short two men during the three days they were absent, weakening the fire fighting force, and putting in jeopardy the lives and property of the citizens of this City. There is at least one well-known instance in which the Fire Dept. of this city refused to cross the corporation line in response to a call for aid, and a valuable dwelling was burned to the ground.

"But since by the order of the Director of Public Safety, the Fire Dept. did respond to the call of an employe of the Coal Company as aforesaid, we conclude that a part if not all the money received by Mr. Bertsch as a recompense for the use of Engine, Reel, and Services rendered, rightfully belongs to the City of Jackson, and should have

been paid into the City Treasury in the regular way according to law.

"In conclusion, therefore, we decide that the Suspension of F. W. Bertsch should be made permanent.

"Upon the second charge, Failure to attend fires, we find such failure was not of frequent occurrence, and the charge is not sustained by the evidence.

"Upon the third charge, 'Failure to provide proper Assistant' we pass over for the reason it has not been clearly shown what constitutes a proper assistant, Chief, under the Statutes. In this particular instance, we believe that since the Chief and fireman left the City by order of the Director of Public Safety, he, the Director of Public Safety, should have provided a proper assistant Chief and a substitute Fireman to take the place of the places thus made vacant, by his order.

"No such provision was made, and the fire Dept. was short two men during their absent [absence].

"The Fourth charge — Failure to get permission to leave the City, from the proper authority, — is not sustained by the evidence.

"The Fifth charge — 'Neglect of Duty' is not specific, and is in a measure included in the first charge.

"The Sixth charge — Incompetence, is not sustained by the evidence.

"The Seventh Charge — Other good and sufficient reasons — is not sustained by the evidence."

On August 3, 1915, Bertsch filed with the civil service commission of the city of Jackson a motion

asking it to reconsider its former action, and to reverse and set aside its finding.

No notice was sent to Bertsch as to any action taken by the civil service commission upon his motion to reconsider his case, but on the 20th day of September, 1915, that commission ordered a civil service examination to be held for chief of the fire department. Notice of this examination was published, and on the 20th day of November, 1915, the examination was held. Edward Chapman took this examination and received a grade of 90.7, and on the 18th day of December, 1915, the mayor appointed Edward Chapman as fire chief of the city of Jackson and notified the civil service commission in writing that he had made such appointment.

On the 15th day of June, 1915, there being no eligible list for the position of chief of the fire department, the mayor appointed Edward Chapman to that position without a noncompetitive examination, and Chapman thereupon entered upon the duties of chief of the fire department of the city of Jackson, and from that date up to the 25th day of January, 1916, continued to perform such duties, receiving the salary of the chief of the fire department, all of the pay-rolls upon which his name appeared as chief of the fire department being approved by the civil service commission except the pay-rolls for June and July, 1915, no pay-rolls being approved by the commission until subsequent to August 12, 1915, and the salary as chief of the fire department being paid to Edward Chap-

man from June 15th before approval of said pay-roll by said commission.

On the 17th day of January, 1916, Fred W. Bertsch presented a second application to the municipal civil service commission of the city of Jackson to reverse and set aside its finding, and asking for reinstatement, which application reads as follows:

"To the Civil Service Commission of the City of Jackson,

"*Jackson, Ohio.*

"Gentlemen: — The undersigned, F. W. Bertsch, respectfully requests you to reconsider the action of the Civil Service Board, as constituted when said action was taken, in permanently suspending him as Chief of the Fire Department of the City of Jackson, Ohio, and to reverse, rescind and set aside the finding then made, and for his reinstatement as Chief of said Fire Department, for the reasons following, to-wit: —

"First: Said Commission was without jurisdiction in the premises.

"Second: Charge No. 1, upon which said finding was based, was not sustained by the evidence adduced at the hearing.

"Third: Said Charge No. 1 does not set forth a violation, either in letter or in spirit, of either the State or municipal Civil Service laws or rules, or of the General Code of Ohio.

"Fourth: The action of the Commission was illegal, and was itself a violation of the Civil Serv-

ice laws and rules of the City of Jackson, and of the State of Ohio.

> "Respectfully yours,
>
> "F. W. Bertsch,
>
> "By Charles H. Jones,
> *"Attorney."*

And the civil service commission on the 24th day of January, 1916, made and entered the following order:

> "Jackson, Ohio, *January 24, 1916.*

"The Civil Service Commission of the City of Jackson, Ohio, met at the office of the Director of Public Service, pursuant to the adjournment of January 20th. Members present: Keltemback, Sullivan and Stevenson.

"The commission took up for further consideration the application of F. W. Bertsch for reinstatement as chief of the fire department of the City of Jackson, Ohio, said Bertsch being present in person and by counsel.

"After hearing the argument of counsel, and upon consideration of the evidence introduced at the hearing of the charges against said Bertsch, and upon consideration of the investigation and report in the matter, made and filed by the State Civil Service Commission of Ohio, and the recommendation of said commission, this Commission is of the opinion, and so finds, that the Civil Service Commission of the City, at the time of the hearing of the charges preferred against said Bertsch, had

no jurisdiction to hear the same, and that the charge on which said Commission made his suspension permanent was not sustained by the evidence adduced; that said charge, even if proven, did not constitute a violation of the civil service rules or laws of the City of Jackson, or of the State of Ohio, and that the action of said commission in ordering F. W. Bertsch permanently suspended was wholly illegal, void and unauthorized, and said action is therefore reversed, rescinded and set aside.

"The Commission further finds and declares that the appointment of Edward Chapman as Chief of the fire department, following the action of said Commission, was illegal and unauthorized.

"The Commission therefore orders that said F. W. Bertsch be, and he is hereby, reinstated as Chief of the Fire Department of the City of Jackson, Ohio, and restored to all things he has lost by reason of the aforesaid action of the Commission, his reinstatement to take effect as of the date of his suspension, to-wit: June 15th, 1915.

"It is further ordered that the Secretary notify the Director of Public Safety, and Edward Chapman of this action of the Commission."

The commission issued this order to Arthur Lesser, director of public safety, directing him to reinstate F. W. Bertsch as chief of the city fire department as of date June 15, 1915.

Thereupon Bertsch took possession and entered into control of the property and paraphernalia of the fire department and assumed to act as its chief, and the relator also attended fires and claimed to be the chief. Bertsch never took a competitive ex-

amination under civil service for the position of fire chief, but did on June 19, 1913, qualify by taking a noncompetitive examination. Bertsch from June 15, 1915, until January 25, 1916, did not interfere in any way with the relator while in the performance of the duties connected with chief of the fire department, and did not perform any of the duties of such chief, nor did he institute any proceedings in court to obtain reinstatement in said position or to compel the removal of Chapman.

The relator prays for a peremptory writ commanding the director of public safety to place the relator's name on the official record of the department of public safety as chief of the fire department of the city of Jackson, Ohio, commanding him to place his name on the pay-roll of said department, to certify such pay-roll to the proper disbursing officer for payment to the relator of his official salary as chief of the fire department of the said city of Jackson, Ohio, and to issue orders requiring the members of that department to recognize the relator as chief and accept from him official orders issued in his official capacity; and for such other and further relief as may be proper.

*Messrs. McGhee, Davis & Boulger,* for relator.
*Mr. Benner Jones* and *Messrs. Willis & Jones,* for defendant.

DONAHUE, J. The first question presented by the record in this case is as to the validity of the order of the civil service commission of the city of Jackson, Ohio, permanently suspending Fred-

erick W. Bertsch from the office of chief of the fire department of that city.

On the 15th day of June, 1915, the mayor of Jackson suspended Mr. Bertsch from office and forthwith certified that fact, together with the causes for such suspension, to the civil service commission, and that commission within five days from the date of the receipt of the charges proceeded to hear the same and rendered a final judgment thereon, ordering that the suspension of Bertsch be made permanent.

There is no complaint made as to the regularity of the proceedings, but it is claimed that the charge on which Bertsch was permanently suspended is not included within the terms of the statute authorizing the mayor to suspend the chief of the fire department, and that the civil service commission has no authority to make the suspension permanent upon any charge except such charge as would authorize the mayor to suspend.

Charge No. 1, which was sustained by the civil service commission upon the evidence, is a charge of gross neglect of duty, whether so designated or not. The commission in its finding upon the fifth charge, "neglect of duty," found that "in a measure, the first charge included the fifth;" but even if the commission had found that the first charge did not include gross neglect of duty the fact would still remain that that charge comes within the meaning of the term as used in the statute, and therefore authorized the permanent suspension of the chief of the fire department.

The civil service commission also found "the seventh charge — other good and sufficient reasons — is not sustained by the evidence," but it is very clear·that if charge No. 1 does not come within the meaning of the term "gross neglect of duty," as used in the statute, it does come within the term "any other reasonable and just cause."

The mere failure of the civil service commission to recognize that fact does not invalidate its judgment.  The commission having found the facts in reference to the charges filed against Mr. Bertsch, it is the province of the court to determine whether the facts so found constitute any legal ground for the removal of the officer.  The conclusion necessarily follows that the suspension by the mayor was legal, for the reasons stated in the charges; that the judgment of the civil service commission sustaining these charges and ordering that the suspension be made permanent was a valid and final judgment; and that there then became and was a vacancy in the office·of chief of the fire department of the city of Jackson.

If it be conceded that the civil service commission has authority upon motion to rescind and set aside any final judgment made by it, it is evident that in this case it refused to do so, although perhaps no formal order was made to that effect.

The motion of Bertsch to reconsider and reverse and set aside its findings was filed with the commission on the 3d day of August, 1915, and on the 20th day of September, 1915, the commission ordered a civil service examination to be held for chief of the fire department.  This was a declara-

tion by the commission that it refused to rescind its orders, and that there was then a vacancy in the position of chief of the fire department, to be filled according to law.

This examination was held, and the relator took this examination, receiving a grade of 90.7. His name was certified to the mayor, who on the 18th day of December, 1915, appointed him as fire chief of the city of Jackson, and notified the civil service commission in writing that he had made such appointment.

This exhausted the jurisdiction of the mayor and the civil service commission, and closed the transaction so far as they were concerned.

It is undoubtedly the duty of the civil service commission to certify a list containing the names of at least three persons eligible to appointment, where that number of persons have taken the examination and received the minimum grade fixed by the commission, and it is perhaps true that the appointing authority may demand that three names shall be certified to it upon an eligible list before it is required to make an appointment, even if further examinations are necessary to be held in order to secure such a list, yet it is not necessary to the validity of an appointment to require such a list to be certified.

The appointment of Chapman was a legal and valid appointment, and there was no vacancy in that office when the second notice of Bertsch was filed with the civil service commission.

While it is of no legal importance, yet it is apparent that Bertsch did not rely upon his motion

filed August 3, 1915, but on the 7th day of January, 1916, filed a new and separate motion with the then civil service commission of the city, asking that the final judgment against him be rescinded, because the commission was without jurisdiction, because its finding was not sustained by the evidence, because charge No. 1 did not constitute a violation of the state or municipal civil service laws or rules, or of the General Code of Ohio, and because the action of the commission was illegal.

It was this motion that was heard by the civil service commission on the 24th day of January, 1916, and an order made reinstating him as chief of the fire department, notwithstanding the city of Jackson then had a chief of the fire department duly and legally appointed under civil service rules.

Certainly the civil service laws of this state do not justify such "fast and loose" proceedings on the part of the civil service commission. If this commission had sustained the first motion of Bertsch, before a permanent appointment had been made by the mayor of the city under its authority and direction, this court would probably not interfere notwithstanding the statute provides that the commission's judgment upon the charges filed by the mayor on suspending an officer shall be final; but certainly its jurisdiction is exhausted when it overrules this motion, proceeds to hold an examination and certifies to the mayor a list of persons eligible to be appointed, which list the mayor accepts, although it contains but one name, and makes an appointment therefrom.

If, after that has been done, the same or a subsequent civil service commission can rescind the original order permanently suspending the officer, and reinstate him, then by the same course of reasoning it can a few months later rescind its order rescinding the original order, and so on indefinitely, to the hurt and final destruction of the public service. Nor can this proceeding be justified under the provisions of the civil service laws, Section 486-16, General Code (103 O. L., 706), for that section expressly provides that the person must be separated from the service without delinquency or misconduct on his part, and that he may be reinstated within one year from the date of such separation to a vacancy in the same or similar office or position in the same department.

The chief of the fire department was separated from the service on account of delinquency and misconduct on his part as found by the civil service commission on the hearing of the charges filed against him by the mayor, and its judgment in that respect is final. At the time the civil service commission attempted to reinstate him in office there was no vacancy in the same and therefore he could not be reinstated, for the rights of the relator had then intervened. The relator having been lawfully appointed is entitled to hold that office until he is lawfully removed.

*Writ allowed.*

Nichols, C. J., Johnson, Wanamaker, Newman and Matthias, JJ., concur.
Jones, J., not participating.