Taft, J.,
dissenting. I agree with respondent’s contention that relator by his conduct waived his right to object to the method of examination.
It is conceded that there is no justification on this record *228 for finding any fraud or bad faith on the part of either the civil service commission or respondent.
The agreed statement of facts reads in part:
“5. That prior to said examination the civil service commission of the city * * * posted on the bulletin board of the police department a notice of examination which stated that 75 per cent of said examination would be written and 25 per cent of the examination would be oral and interview; that the plaintiff-relator saw said notice and made no objection to the oral part of said examination at any time prior to examination, made no objection during the written and oral examination, and made no objections after said written and oral examinations until after the civil service commission announced the grades resulting from said examinations. ’ ’
It is apparent that relator’s conduct, as so described, was inconsistent with any contention that the Findlay civil service commission had no authority to use “the method of examination” which it used and which had been so described in the notice of examination.
If the relator had objected to that method of examination, the commission might have agreed with his present contention that the commission was not authorized to use that method. However, with full knowledge of all the facts, which he now contends made the use of that method illegal, relator not only did not warn the commission against doing what he now claims it had no legal authority to do but his conduct, in taking the examination without objection, amounted to a recognition of the legal authority of the commission to do what it did. As a result, the commission went ahead with the examination in accordance with its notice. Further, respondent, who might have joined with relator in questioning the authority of the commission to use the method which it used in conducting the examination if relator had questioned that authority, reasonably assumed that no question would be raised with regard thereto and expended his time and effort in taking the examination.
Relator is in the position of one, who has been told that a certain rule will be applied in a game, has not objected to that rule because he could not anticipate whether its application would help or hinder his play, has played the game and lost *229 because of the application of the rule, and then for the first time after losing claims that the rule was wrong and so the game should be played over again.
As stated in 19 American Jurisprudence, 650, Section 50:
“Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action. ’ ’
However, relator contends that the action of the commission in conducting an examination which was partly oral violated laws which are declaratory of public policy and were enacted in the public interest; and that a person cannot waive his rights or privileges if such a waiver would constitute a violation of public policy. There would of course be a violation of public policy involved in an action of the commission refusing to have a promotional examination “in writing,” at least so far as' such examination consisted of -inquiries of and answers by the candidates for promotion. However, it is difficult to comprehend how a waiver by relator of his right to insist upon having that part of such an examination in writing would represent any more serious an interference with public policy than would his voluntary decision not to take the examination at all. He could certainly refuse to take the examination. ' -
Paragraph one of the syllabus in Tone v. Columbus, 39 Ohio St., 281, 48 Am. Rep., 438, reads:
“The principles of estoppel apply as well where proceedings of a [municipal] corporation are questioned on the ground of the unconstitutionality of the statute under which they are had, as where they are attacked upon other grounds, unless such proceedings, or what is sought to be accomplished by them, are per se illegal or malum prohibitum. Want of power in the corporation may be waived, or an estoppel may arise from failure to assert it at the proper time.”
See also Board of Commrs. of Darke County v. Board of Commrs. of Mercer County, 93 Ohio St., 37, 112 N. E., 147.
This court has previously consistently recognized that a certification to the appointing officer such as was made to and *230 acted upon by the mayor of Findlay in the instant case, although incorrect or not in compliance with the civil service laws, may be effective.
Thus, in Kluth v. Andrus, Dir., 157 Ohio St., 279, 105 N. E. (2d), 579, this court gave effect to a certification by a city civil service commission although it was based on a “promotional * * * examination” which “did not fully comply with the civil service laws” (paragraph one of the syllabus) by reason of its “inclusion of weight for the so-called performance record” which was in that case conceded (157 Ohio St., at 282) to be “contrary to the civil service laws of Ohio.” Also, in State, ex rel. Byrd, v. Sherwood, Dir., 140 Ohio St., 173, 42 N. E. (2d), 889, effect was given to “an incorrect certification of an eligible list” (paragraph two of syllabus) which was incorrect and claimed to be “void for the reason that it did not contain the names of persons as candidates in the order of their respective rank as required by Section 486-12, General Code” (140 Ohio St., at 182).
In Board of Trustees v. State, ex rel. Laird, 128 Ohio St., 560, 192 N. E., 877, the board of trustees of a state institution contended that certain sections of the General Code “provide that the board shall designate the superintendent * * * and that the superintendent shall appoint the matron” so “that it was wrong for the Civil Service Commission to conduct a joint examination for superintendent and matron and * * * such a combined examination is illegal” (128 Ohio St., 563, 564). With regard to that contention, paragraph one of the syllabus of the case reads:
“A petition for writ of mandamus, to compel the board of trustees of a children’s home to appoint a superintendent from a certified list furnished by the Civil Service Commission of Ohio, is not insufficient in law merely because it shows that the examination preliminary to the preparation of such list was a combined examination of applicants for the positions of superintendent and matron. Objection by a board of trustees, to such combined examination, is not timely if made first by demurrer to such petition. ’ ’
As stated in the opinion at page 564:
“If anyone for good cause wished to object, he should have done so prior to the examination.”
*231 In the same case an applicable statute provided that, on being notified that a position in the classified service was to be filled, “the commission shall * * * certify to the appointing officer thereof the names * * * of the three candidates standing highest on the eligible list.” See 106 Ohio Laws, 408, and 103 Ohio Laws, 704. Paragraph two of the syllabus of the case reads:
“Such petition is not insufficient in law merely because it shows that one of the persons named on such certified list died after preparation of the list. Having failed to request of the Civil Service Commission a complete list of three names, the board of trustees-may not object to a list of two names by demurrer to such petition. ’ ’
With respect to that paragraph of the syllabus, it is stated in the opinion at page 564:
“* * * one of the three persons named in the certified list, had died. The board of trustees contends that it was illegal for the court to order it to make an appointment from a list containing only the two remaining names. There is no doubt that the board of trustees had a right to request a certified list of three names. If the board failed to make such request, however, it cannot complain, and an appointment made from a certified list of less than three would not be illegal. * * # If a request of the board of trustees for a full certified list had been denied, and such fact had been set up by answer, a writ of mandamus could not have issued to compel an appointment from a list of two names * * *.”
This court unanimously affirmed a judgment of the Court of Appeals which had allowed a writ of mandamus to compel the appointment.
In State, ex rel. Shapman, v. Lesser, Dir., 94 Ohio St., 387, 115 N. E., 33, where substantially the same statute requiring certification “of the three candidates standing highest on the eligible list” was involved, paragraph four of the syllabus reads:
‘ ‘ The appointing authority may demand that the civil service commission certify a list containing at least three names, before making an appointment, but where a list is submitted containing less than three names and the appointing authority *232 accepts the list and makes the appointment, such appointment is valid. ’ ’
In view of such decisions, it should be obvious that the method of examination adopted by the civil service commission in the instant case did not represent the doing of anything “per se illegal or malum prohibitum.” At most, in using the method of examination which it used, the commission acted with what was referred to in paragraph one of the syllabus of Tone v. Columbus, supra, as a “want of power.”
In my opinion, therefore, relator could waive or be estopped to assert his right to have the examination wholly “in writing.” I believe that this conclusion also finds support in our decisions in Moore v. Thompson, 161 Ohio St., 339, 119 N. E. (2d), 283 (election for judge not set aside where ballot failed to indicate term as required by statute and where printed proofs of official ballots not posted as required by statute, because defeated candidate by conduct had indicated knowledge before election of form of ballot and had not questioned it until after election); Mehling v. Moorehead, 133 Ohio St., 395, 14 N. E. (2d), 15 (“all formal objections which can be made should be made seasonably before an election”); and State, ex rel. Whetsel, v. Murphy, 122 Ohio St., 620, 174 N. E., 252 (election not set aside on account of improper descriptive matter on ballot because “election has already been held, and no objection was made to the descriptive matter, although it appears that by the exercise of due diligence an effective objection could have been made in time to have prevented the descriptive matter being placed upon the ballot”). See also State v. Tudor, 154 Ohio St., 249, 257, 95 N. E. (2d), 385; Rhoades v. City of Cleveland, 157 Ohio St., 107, 115, 116, 105 N. E. (2d), 2.
Actually, in a case of this kind, there is much force to an argument that it would be a violation of public policy if the relator should be allowed to prevail. Thus, in People, ex rel. Lewis, v. Waite (1873), 70 Ill., 25, it is said in the opinion of the court by Mr. Justice Scott:
“It is insisted * * * the election was void, for the reason it was not held at the place designated in the notices required by law to be posted prior to holding the election.
“ * * * relator participated in the election he now seeks to *233 have declared void, by voting thereat, and was himself an opposition candidate to respondent. Relator knew then, as well as now, what irregularities had intervened in the conduct of the election, and he ought not to be permitted to disturb the public welfare by having an election declared void, in which he participated with full knowledge of all irregularities that existed. A sound public policy forbids it. The only informality charged is, the election was held at an improper place. This fact was known to relator. He uttered no complaint at the time, but submitted his claims to the office to the voters of the town voting at that place, and claimed the right to and did have his own vote recorded. These facts make it inequitable that he should have the remedy sought * #
It may be observed that the parts of the case of Gano v. State, ex rel. Robinson, 10 Ohio St., 238, relied upon in the majority opinion appear to be inconsistent with the subsequent decisions of this court in State, ex rel. Smith, v. Nazor, 135 Ohio St., 364, 368, 21 N. E. (2d), 124, and State, ex rel. Joecken, v. Lynch, 123 Ohio St., 676, 177 N. E., 765.
Bell, J., concurs in the foregoing dissenting opinion.