This controversy results largely from the unfortunate dereliction of the then counsel for the relator in failing to file an application for rehearing after dismissal of the first application for modification of award. It is agreed that on May 18, 1932, the respondent mailed to the relator the required notice of the dismissal of that application for modification of award. Thereafter on June 16, 1932, counsel wrote a letter inquiring whether an application for rehearing had been filed; and more strangely still, after this apparent recognition of the necessity for filing such an application, no further action was taken until after the statutory thirty-day period had elapsed when on August 2, 1932, the second application for modification of award was filed. Confronted with this dilemna present counsel for the relator seek to extricate their client from the difficulty by disregarding the first application for modification of award. It is their theory that the two applications for modification of award involve different matters. They insist that the second application related to the leg amputation, and that the first did not. They urge also that the commission did not consider the matter of his leg *Page 274 
amputation until he filed his second application for modification of award. They contend further that the second application was dismissed on a jurisdictional ground, and that the first was not, thereby making it unnecessary to file an application for a rehearing of the first, as was done with reference to the second.
Counsel for the respondent commission concede that the orders of dismissal are unfortunately not as specific as they could and should be under the provisions of Section 871-9, General Code, but they insist that according to the commission's records the leg amputation was involved in the first application for modification and was considered by the commission at the time this application was dismissed on May 13, 1932. They contend further that this dismissal was upon a jurisdictional ground.
To this the relator rejoins that this court is permitted to consider no part of the commission's records except the orders made; and he further insists there can in any event be no presumption by this court that the commission considered all matters then before it.
Possibly it should first be observed that the limited wording of the orders dismissing the two applications for modification is of no assistance whatsoever in reaching a decision in this case. The first provides simply that "after conferring with Dr. Dorr, the Commission orders application for modification of award be dismissed." The second reads "that the present application for modification of award be dismissed."
Next it should be noted with equal regret that the applications themselves are in no wise decisive of the controversy. The second is specific in stating that "I have not been compensated for the loss of my right leg"; but the first contains merely the general statement "that he has suffered disability far in excess of that recognized by compensation paid. My attending physician reported me unable to resume employment *Page 275 
January 21, 1929, and you only paid compensation to January 10, 1929."
In this sort of predicament must recourse be had to the always unsatisfactory expedient of presumptions alone, or may consideration be given to the actual facts as disclosed by an examination of the commission's records, especially since this is an original action and not a proceeding in error? This question necessitates a reexamination of several decisions of this court. In his opinion in the case of Noggle v. IndustrialCommission, 129 Ohio St. 495 (196 N.E. 377), on page 503 Judge Jones says: "The same conclusion is also supported by the following recently decided cases holding that the right of appeal depends upon the fact whether the record and final order of the commission disclose that its denial of claimant's right to receive compensation is based upon a finding that the commission has no jurisdiction of the claim." However, his language was not incorporated in the court's syllabus. One of the cases to which he refers is that of Metal Specialty Co. v.Gregory, 128 Ohio St. 452, 191 N.E. 701, in which Judge Bevis states in his opinion that "in determining the legal effect of an order of the commission the court will look not alone to the order itself, but to the entire record." Again this language does not appear in the syllabus. Another case cited is that ofState, ex rel. Depalo, v. Industrial Commission, 128 Ohio St. 410, 191 N.E. 691. In his opinion Judge Wilkin states that "the facts of the case are decisive," that "the issue cannot be determined entirely by the order of the commission," and that an order of the commission is appealable "if the facts of the case show that the denial of the right to continue to receive compensation was based upon a want of jurisdiction and authority to award compensation." Later he says further that "the reason for the denial is a jurisdictional fact, and like any other essential fact, when placed in issue, must be proved." *Page 276 
But none of these statements was carried into the syllabus. Likewise in his opinion in the case of State, ex rel. Randolph, v. Industrial Commission, 128 Ohio St. 27, 190 N.E. 217, Judge Matthias observes that "whenever in an action similar to this the question has been presented whether a denial of compensation by the commission was upon jurisdictional grounds, going to the basis of the claimant's right, this court has considered the entire record before the Industrial Commission to determine that question." But again the syllabus does not incorporate this language. Furthermore, in other cited cases such as State, ex rel. Cezkovsky, v. Industrial Commission,126 Ohio St. 434, 185 N.E. 807; Industrial Commission v.Phillips, 114 Ohio St. 607, 151 N.E. 769, a similar situation obtains. However, in his opinion in the case of State, ex rel.Araca, v. Industrial Commission, 125 Ohio St. 426,181 N.E. 870, Judge Stephenson states that "the naked finding of the commission to the effect that it has or has not jurisdiction of a particular claim is not conclusive when the application of the claimant is denied, as the court in an action in mandamus must consider the same facts that the commission considered in determining the question of jurisdiction"; and then in paragraph three of the syllabus itself the court holds that the facts contained in the commission's record may be considered for the purpose of even contradicting an erroneous or incorrect statement in an order of the commission. If they can be used to contradict an erroneous or incorrect statement in an order, afortiori they can be employed to supplement an ambiguous or deficient one to ascertain the matters actually before the commission. But the relator relies upon the cases of State, exrel. Vosnosky, v. Industrial Commission, 125 Ohio St. 197,180 N.E. 894; Industrial Commission v. Nagy, 113 Ohio St. 215,148 N.E. 398, and Industrial Commission v. Hogle, 108 Ohio St. 363, 140 N.E. 612, which he insists are in conflict with *Page 277 
the above mentioned pronouncements. Significantly Judge Stephenson in his opinion in the Araca case makes no mention of any one of these cases. It is sufficient to observe that the syllabus of the Vosnosky case makes no reference to the question involved in the instant case. It is of course true that the per curiam opinion in the Nagy case contains the statement that "the Industrial Commission speaks by its record," and then cites the Hogle case; but it should be noted that according to the record the Industrial Commission had acted in the claimant's favor. It is likewise true that in theHogle case the second paragraph of the syllabus states that "the Industrial Commission speaks by its record, and such final action, to be the basis of an appeal, must affirmatively appear upon the record of the proceedings of the commission"; but again it must be observed that "every fact was found by the commission in favor of the claimant" in that case and the alleged final order read simply: "And the claim was closed. (Note. — The word 'closed' indicates that no continuation was had.)" Of course under such circumstances this court could not do else than to hold that this entry indicated no affirmative or final action by the commission; and obviously this court could not examine the records of the commission and then erect therefrom an order when in fact none had been made by the commission itself. In marked contrast the instant case involves an order of the commission affirmatively dismissing the relator's first application for modification; and the only request now made of this court is to examine the commission's records to ascertain the matters that had been presented to the commission for its determination at the time the order was made. In the Hogle case it made no difference what matters were before the commission inasmuch as there was no order whatsoever indicating that affirmative action had been taken. Thus this court is not asked to enunciate a rule at variance with its earlier decisions. On *Page 278 
the contrary it would be a most unfortunate departure from the well-settled liberal policy of this court if the Workmen's Compensation Act were to be construed so narrowly as to prevent the claimant from perfecting an appeal from an order without regard to the matters actually presented to the commission for its determination. Of course in the instant case such a narrow construction would be advantageous to the relator with reference to his first application for modification, but he seems not to realize that it would at the same time prevent him from showing the matters actually before the commission when it entered simply a dismissal of his second application for modification upon which he now relies. But of manifestly greater importance is the fact that such a rule ultimately would work untold and unnecessary hardship upon many claimants seeking future relief under the salutary provisions of this act.
Was the leg amputation actually before the commission when it dismissed the relator's first application for modification on May 13, 1932? As already observed, the application simply states generally that he "suffered disability far in excess of that recognized by compensation paid." But it should be noted that the leg was amputated nearly three years before this application was filed. It would therefore seem most improbable that the relator would ignore so serious a loss when bringing his condition to the attention of the commission. But fortunately, reliance need not be placed upon so uncertain a basis as mere probability. On the contrary, the records of the commission disclose that on May 3, 1932, the relator filed an affidavit claiming that as a result of his injury on December 12, 1928, he had his leg amputated just below the knee; and with the affidavit was a letter from counsel calling attention to the amputation. Furthermore, it is not disputed that in another affidavit dated August 27, 1931, the relator presented the claim that his right *Page 279 
foot had been amputated. Likewise, under date of July 14, 1930, the relator's attending physician, Dr. E.P. Edwards, prepared a supplemental report in which the amputation is mentioned five times. Under circumstances such as these it is difficult to understand how this court can be expected to indulge in inferences, first, that no claim for the leg amputation was before the commission when the first application for modification was dismissed, and, second, that the commission gave no consideration to such claim. Equal difficulty is encountered in attempting to draw the third desired inference to the effect that the dismissal was upon other than jurisdictional ground. The records disclose no other basis for the commission's action than that the amputation resulted from a systemic tubercular condition unrelated to the claimant's injury on December 12, 1928.
From the foregoing discussion it is readily apparent that counsel for the relator should have prepared to appeal the matter by filing the statutory application for rehearing within thirty days after notice of the dismissal of the first application for modification. Having failed to perform this duty, the right thus lost cannot be revested by resort to a subsequent application for a modification involving the same claim. State, ex rel. Randolph, v. Industrial Commission,128 Ohio St. 27, 190 N.E. 217; Industrial Commission v. Glenn,101 Ohio St. 454, 129 N.E. 687.
The relator's prayer for a peremptory writ of mandamus must be denied at his costs.
Writ denied.
STEPHENSON, WILLIAMS, JONES, MATTHIAS and ZIMMERMAN, JJ., concur. *Page 280