By the Court.
 

 Section 46 of the Charter of the city of Zanesville provides:
 

 “The candidate for any office receiving a majority of first-choice votes cast for candidates for that office shall be declared elected. If no candidate shall receive a majority of the first-choice votes for such office, then the second-choice votes received by each candidate for such office shall be added to the first-choice votes for each such candidate and the candidate receiving the largest number of first-choice and second-choice votes combined, if such votes constitute a majority, shall be declared elected. If no candidate shall have a majority, after adding the first-choice and second-choice votes, the other-choice votes received by each candidate shall be added to the combined first-choice and second-choice votes received by each such candidate and the candidate having the largest number of first-choice, second-choice and other-choice votes combined shall be elected to such office.”
 

 Frank M. Worstall did not have a majority of either the first-choice votes or of the first-choice and second-choice votes combined, or a plurality when all the choices were counted. He, therefore, would not be entitled to the office of mayor of the city of Zanesville as a result of the election.
 
 Benner
 
 v.
 
 Bennett,
 
 21 Ohio St., 431;
 
 State, ex rel. Sheets, Atty. Genl.,
 
 v.
 
 Speidel,
 
 62 Ohio St., 156, 56 N. E., 871;
 
 Prentiss
 
 v.
 
 Dittmer,
 
 93 Ohio St., 314, 112 N. E., 1021, L. R. A. 1917B, 191;
 
 State, ex rel. Haff,
 
 v.
 
 Pask,
 
 126 Ohio St., 633, 186 N. E., 809;
 
 State, ex rel. Cox,
 
 v.
 
 Riffle,
 
 132 Ohio St., 546, 549, 9 N. E. (2d), 497;
 
 State, ex rel. Kirk,
 
 v.
 
 Wheatley, ante,
 
 164, 12 N. E. (2d), 491.
 

 Having disposed of that.portion of the prayer of the petition which seeks to have Frank M. Worstall
 
 *400
 
 declared elected, the only remaining questions to determine are whether a petition to contest an election is the proper remedy in this case and, if so, whether the election for mayor held in Zanesville on November 2, 1937, was null and void.
 

 The jurisdiction of the court in a contest of election is set forth in Section 4785-171, General Code. The last sentence of that section provides that “If the court find that no person was duly elected, the judgment shall be that the election be set aside.” Under such circumstances the court would have jurisdiction to declare an election void. Consequently, since a definite remedy is provided by statute, resort to proceedings in
 
 quo warranto
 
 is not proper.
 
 State, ex rel. Grisell,
 
 v.
 
 Marlow,
 
 15 Ohio St., 114;
 
 Heffner
 
 v.
 
 State, ex rel. Johnson,
 
 131 Ohio St., 13, 15, 1 N. E. (2d), 146.
 

 A majority of this court having held heretofore that a direct appeal may be filed from the Court of Common Pleas to this court in an election contest, we are, therefore, to determine whether this particular election, under the pleadings and upon the evidence produced, should be set aside. See
 
 Foraker
 
 v.
 
 Perry Township Rural School Dist.,
 
 and
 
 Davis
 
 v.
 
 Watts,
 
 130 Ohio St., 243, 199 N. E., 74;
 
 Thompson
 
 v.
 
 Redington,
 
 92 Ohio St., 101, 110 N. E., 652;
 
 Link
 
 v.
 
 Karb, Mayor,
 
 89 Ohio St., 326, 104 N. E., 632;
 
 State, ex rel.,
 
 v.
 
 Harmon,
 
 31 Ohio St., 250.
 

 On December 30 and 31, 1937, the contesters having stated in open court before any evidence was offered that they were not contesting the election of those declared elected to council, a decree was entered declaring the four members of council elected. It is said that, inasmuch as the councilmen were elected on the same ballot the voters used for selecting a mayor, such a concession was fatal to the entire petition for contest. This would not necessarily be true. For example, if there was a long ballot used and two were to be elected
 
 *401
 
 to a certain office, but the board failed to make snch a designation of the number to be elected, the ballot might be void as to that office but valid as to all other positions to be filled where proper designations had been made. See
 
 Foster
 
 v.
 
 Scarf,
 
 15 Ohio St., 532;
 
 Heffner
 
 v.
 
 State, ex rel. Johnson, supra.
 

 It is, therefore, proper to determine whether the ballot used, so far as the mayor is concerned, substantially complied with the provisions of Section 42 of the Charter of the city of Zanesville, and whether, because of an alleged uncertainty, the election should be set aside as the result did not express the will of the people.
 

 The contesters contend that the decision in
 
 State, ex rel. Greenlund,
 
 v.
 
 Fulton, Secy. of State,
 
 99 Ohio St., 168, 124 N. E., 172;
 
 Board of Education
 
 of
 
 Ashville Village School Dist.
 
 v.
 
 Briggs, Aud.,
 
 114 Ohio St., 415, 151 N. E., 327; and
 
 State, ex rel. Jackson,
 
 v.
 
 Board of County Commrs. of Fayette County,
 
 122 Ohio St., 456, 172 N. E., 154, are decisive of the questions involved here.
 

 In the
 
 Greenlund case,
 
 the court held that an amendment to the Constitution, providing for classification for purposes of taxation contained neither the full text of the amendment, nor the exact proposal as set forth in the initiative petition submitted to the voters. In fact, the voters were asked to determine in broad terms whether “the General Assembly shall classify property for taxation purposes.” Nothing was placed on the ballot stating how or in what manner this classification should be effected.
 

 In
 
 Board of Education
 
 v.
 
 Briggs, supra,
 
 the ballot in a bond issue proposal failed to state that the tax was to be outside of the legal limitations, and failed to state the average number of mills required for the issue and the maximum period of years of the levy. The court held that under Section 5649-9c, General Code (111 Ohio Laws, 336), it was mandatory that
 
 *402
 
 such matters be placed on the ballot, and with their omission there had not been a substantial compliance with the law.
 

 In
 
 State, ex rel. Jackson,
 
 v.
 
 Board of County Commissioners, supra,
 
 a failure to publish a notice of the election was held fatal, since the requirements of Section 2293-21, General Code, were mandatory in regard to the issuance of bonds.
 

 In all of these cases issues were presented to the voters. In one, a change in the taxation system by constitutional amendment was sought, while in the other two the issuance of bonds outside of the limitations imposed by law without a vote of the people was submitted.
 

 All of the omitted steps were held to be mandatory, and in each of them taxpayers were to be affected if the proposals carried. It has been repeatedly held that “what the law requires for the protection of the taxpayer, for example, is mandatory and cannot be regarded directory merely.” 2 Sutherland Statutory Construction (2d Ed.), 1137, Section 628, quoted with approval in
 
 Board of Education of Ashville
 
 v.
 
 Briggs, supra,
 
 page 421.
 

 It has generally been held that the provisions with reference to the issuance of public securities or the incurring of public indebtedness must be strictly construed if proceedings are instituted before the sale of the securities has taken place or the indebtedness actually incurred.
 
 State, ex rel. Shoemaker,
 
 v.
 
 Trustees of Goshen Township,
 
 14 Ohio St., 569, 584;
 
 State, ex rel. Curren, Dir. of Law,
 
 v.
 
 Rees,
 
 125 Ohio St., 578, 183 N. E., 432. .
 

 The same rules'do not, however, apply to elections where candidates for office are to be selected. While the failure to publish a notice of an election where a bond issue was presented voids the election, the mere failure of a sheriff to give proper notice of an election by proclamation-of a judge is not conclusive of the in
 
 *403
 
 validity of the election. See
 
 State, ex rel. Atty Genl.,
 
 v.
 
 Taylor,
 
 15 Ohio St., 137, 144. Laws providing for a notice in general elections for officers are to be' liberally construed, and the failure to give notice will be considered a mere irregularity where a comparatively complete vote and full expression of opinion is obtained at the polls and the voters are not misled.
 
 Foster
 
 v.
 
 Scarf, supra,
 
 page 537;
 
 Dalton, Clerk,
 
 v.
 
 State, ex rel. Richardson,
 
 43 Ohio St., 652, 667, 3 N. E., 685;
 
 Wheat
 
 v.
 
 Smith,
 
 50 Ark., 266, 278, 7 S. W., 161;
 
 Adsit
 
 v.
 
 Osmun, Secy. of State,
 
 84 Mich., 428, 48 N. W., 31;
 
 City of Chicago
 
 v.
 
 People, ex rel. King,
 
 80 Ill., 496, 506; 15 Ohio Jurisprudence, 373, 375.
 

 Where bonds are to be issued or taxes levied, certain steps in the procedure are conditions precedent to taxing property owners. The failure to take such steps is necessarily fatal. On the other hand, where there is an absence of fraud, a substantial compliance with the statute, and the voters are not misled, the will of the electorate should not be set aside in the selection of the officials of a community. Every reasonable intendment must be in favor of the validity of an election, and against holding it void for uncertainty.
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 Cogswell,
 
 8 Ohio St., 620, 628.
 

 In the instant case the form of ballot was almost identical with the one set forth in the charter. The fact that the ballot stated “Vote for One” was not an error which whs caused by fraud. A mayor and four councilmen were to be elected, and it was essential to designate on the ballot when only one person was to be elected and when four were to be selected. It is conceded that it would have been proper to have placed the words “One to Be Elected” under the wtord “Mayor,” and “Four to Be Elected” under the words “For Council.” The charter did not call for such designations, but it was necessary to have some such
 
 *404
 
 wording so the electors would know for how many candidates for council they could vote.
 

 The ballot was set out in three columns giving full opportunity to express first, second and other choices. Only one first-choice vote would count. Likewise only one second-choice vote could be counted. Consequently, reading the words “Vote for One” in connection with the ballot, we cannot say a voter would thus be misled by any action of the election officials in making that designation.
 

 We
 
 now shall consider whether it was mandatory to include on the ballot the instructions to voters, and whether such omission invalidated the election.
 

 Section 42 of the charter does not specifically require the instructions to be placed on the ballot, and yet if objection were seasonably made before election this court probably would have ordered them inserted. However, without the instructions, the informed voter had full opportunity to express first, second and other, choices at the polls. If more secondary choices were not cast, it was due either to a lack of knowledge on the part of the voters or a design by the voters not to express subsequent choices.
 

 Contesters contend thát this lack of knowledge was due to a failure to print the instructions. The evidence presented, however, does not bear out this contention. Sample ballots and cards identical in form with the one actually used were widely circulated. Many workers urged voters to make only a first choice. Similar ballots had been used in previous years. In fact, the instructions contained in Section 42 of the city charter had never been printed on the ballot since the charter was adopted in 1917.
 

 Letters containing sample ballots were mailed to the electors over Worstall’s signature, and at no time was the question of the sufficiency of the ballot raised until after the election. Because of his knowledge of the fact that the particular ballot was used and his
 
 *405
 
 participation in the election, if Worstall were now contesting the election we would unhesitatingly hold he was estopped to contest the election on the ground that the instructions to the voters were omitted. 15 Ohio Jurisprudence, 430. See also
 
 Allen
 
 v.
 
 Glynn,
 
 17 Colo., 338, 29 P., 670;
 
 Schuler
 
 v.
 
 Hogan,
 
 168 Ill., 369, 48 N. E., 195;
 
 State, ex rel. Crawford,
 
 v.
 
 Norris,
 
 37 Neb., 299, 55 N. W., 1086;
 
 Tutt
 
 v.
 
 Hawkins,
 
 53 Neb., 367, 73 N. W., 692;
 
 Bowers
 
 v.
 
 Smith,
 
 111 Mo., 45, 20 S. W., 101, 33 Am. St. Rep., 491, 16 L. R. A., 754, and
 
 Savin
 
 v.
 
 Pease,
 
 6 Wyo., 71.
 

 However, it is argued that the doctrine of estoppel should not be applied in this action since electors have instituted it, and they have a right to have an election determined by a full and complete expression at the polls. It is said that this opportunity to vote was denied the electorate at large.
 

 As we said before, a voter with knowledge of the preferential system was given every opportunity to express as many choices as he desired.- Worstall, in his letter to the voters, said: “I am enclosing a sample ballot for your convenience. I assure you that I will appreciate your vote whether it is first, second or third choices.” Other evidence, such as newspaper articles and cards, shows that it was generally known that subsequent choices could be cast.
 

 Furthermore, the evidence does not disclose that any greater percentage of choices subsequent to the first choice would have been voted if the instructions had been printed. In the result, we find three times as many second choice votes as those for subsequent choices. This would tend to the conclusion that the omission to cast secondary choices was not due to the form of ballot, but rather to the activity of the candidates and campaign managers urging as few choices as possible.
 

 In
 
 State, ex rel. Whetsel,
 
 v.
 
 Murphy,
 
 122 Ohio St., 620, 174 N. E., 252, the board of elections erroneously
 
 *406
 
 printed the ballot with the suffix ££M. D.” after the name of one of the candidates for coroner. This might reasonably be interpreted by the voter to mean that the one candidate for an office where medical knowledge is required was a doctor and that the other was not. The court, however, in an action filed after the election, said:
 

 £ £ On the other hand, the primary election has already been held, and no objection was made to the descriptive matter, although it appears that by the exercise of due diligence' an effective objection could have been made in time to have prevented the descriptive matter being placed upon the ballot. The primary election having been closed and the result declared the court will not order the choice of the people at the primary election to be disregarded.”
 

 So in this case, the election, having been held, should not be disturbed when there was full opportunity to correct any irregularities before the vote was cast. Strictly speaking, all provisions of election laws are mandatory in the sense that they impose the duty of obedience upon those who come within their purview, but irregularities, which were not caused by fraud and which have not interfered with a full and fair expression of the voters’ choice, should not effect a disfranchisement of the voters.
 
 Lewis
 
 v.
 
 Boynton,
 
 25 Colo., 486, 55 P., 732;
 
 Bowers
 
 v.
 
 Smith, supra; Esquibel
 
 v.
 
 Chaves,
 
 12 N. M., 482, 78 P., 504;
 
 Miller
 
 v.
 
 Pennoyer,
 
 23 Ore., 364, 31 P., 830;
 
 State, ex rel. Curtis,
 
 v.
 
 Superior Court,
 
 40 Wash., 518, 249 P., 974.
 

 Where there has been a substantial compliance with the law and no showing that the omission of instructions changed the result in any manner, such provisions of the Charter of Zanesville as the one before us must be considered merely directory after the election. See 20 Corpus Juris, 181,182, Section 223;
 
 State, ex rel. Brooks,
 
 v.
 
 Fransham,
 
 19 Mont., 273, 278, 48 P., 1;
 
 People, ex rel. Hirsh,
 
 v.
 
 Wood,
 
 148 N. Y., 142, 42
 
 *407
 
 N. E., 536. As was so well said in
 
 McGrane
 
 v.
 
 County of Nez Perce,
 
 18 Idaho, 714, 726, 112 P., 312:
 

 “ ‘We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them.’
 

 “It is not difficult to say in advance of their action what they
 
 should have done
 
 and
 
 should not have done.
 
 The law is clear, and it was the unmistakable duty of the officers to follow its mandates, but we are now confronted with a condition and not a theory. They have acted, and the election has been held. The electors have east their votes. The electors have already been subjected to the predicament of casting their votés under circumstances which, at least, rendered it possible for the secrecy of their ballots to be invaded. * * * After all these things have occurred, the question arises as to whether the court shall visit the results and penalties of the negligence or wrongdoing of the election officers upon the innocent electors and declare their votes illegal and the election void, and thereby rob the people of their right of suffrage until the time arrives for-another election. The question is simply reduced to this: Shall the electors be visited with two invasions of their rights instead of one? Shall they be deprived of the right of suffrage for the time being because their officers have acted negligently or wrongfully in the preparation of ballots, or shall the election be sustained and the penalties, if any, be visited upon the parties responsible for the errors or wrongs which have been committed? * * * Under the laws of this state, a general election can only be held biennially, and so if it is not held on the day fixed by law, there will be no other general election for two years thereafter, and in the meanwhile the old officers will hold over until their successors are elected and qualified. * * * Two
 
 wrongs
 
 will no more make a
 
 right
 
 in law and government than in morals. To fol
 
 *408
 
 low up the wrongful preparation of ballots with, setting aside the election would only be adding another injury to an already outraged electorate. ’ ’ Citing with approval
 
 People, ex rel. Hirsh,
 
 v.
 
 Wood, supra.
 
 See also 32 L. R. A. (N. S.), 730.
 

 This expresses our sentiment after a thorough examination of the record. There having been a substantial compliance with the law, the voters should not be penalized by an irregularity where there is no showing that the result was in any way affected by reason of it. Our holding is in accordance with the tendency of this court to insist that all formal objections which can be made should be made seasonably before an election, but that after an election, unless it is showta. that the result was contrary to the will of the electorate, it will not be disturbed. See
 
 State, ex rel. Friedlander, v. Myers, Secy. of State,
 
 128 Ohio St., 568, 192 N. E., 737;
 
 State, ex rel. Patterson,
 
 v.
 
 Schirmer et al., Bd. of Elections,
 
 129 Ohio St., 143, 194 N. E., 13;
 
 State, ex rel. Bigelow,
 
 v.
 
 Butterfield et al., Bd. of Elections,
 
 132 Ohio St., 5, 4 N. E. (2d), 142.
 

 Of course, exceptions to this rule may occur when express mandatory provisions are not substantially complied with by election officials, but we cannot conclude that the issues and evidence presented raised such questions in the controversy before us.
 

 The judgment of the Court of Common Pleas is therefore affirmed.
 

 Judgment affirmed.
 

 Matthias, Day, Zimmerman, Williams, Myers and Gorman, JJ., concur.
 

 Weygandt, C. J., is of the opinion that this direct appeal from the Court of Common Pleas should be dismissed for the reason that under the guise of exercising political power this court is in fact attempting to judicially “review, and affirm, modify or reverse”
 
 *409
 
 a judgment of a Court of Common Pleas instead of a judgment of a Court of Appeals. Under the controlling language of Section 2 of Article IV of the Constitution of Ohio no such power is conferred upon this court. This is in accord with the dissent in the case of
 
 Davis
 
 v.
 
 Watts,
 
 130 Ohio St., 247, 199 N. E., 76.