**THOMAS v COUNTY COMMISSIONERS**

Ohio Common Pleas, Vinton Co

Decided Nov 21, 1938

Vernon R. Barrett, Chillicothe, and Kenneth T. Stevens, Chillicothe, for plaintiffs.

Charles S. Keeney, Prosecuting Attorney, McArthur, and C. W. Smith, McArthur, for defendant.

DAVIS, J, of Pike County,. sitting by assignment in Vinton County.

## OPINION

By DAVIS, J.

This is a suit in equity to enjoin the issuance of bonds by the Board of County Commissioners of Vinton County, Ohio, in the sum of seventy-five thousand dollars ($75,000), for the purpose of constructing a new county court house with the aid of Federal Public Works Administration.

. The defendant board first submitted the question of the issuance of said bonds to the Vinton County electorate at the primary election held in said county on August 9, A.D. 1938. At said primary election 4,327 ballots were voted on said question, 2,474 in favor of the bond issue and 1,853 against it. The favorable vote being only 57% of the total vote cast on said issue, the said bond issue failed of passage.

Thereupon the defendant board, mindful of the fact that the then existing court house had been condemned by the proper state authority as being unfit for further use and occupancy and as detrimental to the public health and morals of the community and county generally, secured an extension of time for providing the county's share of the cost of said new court house project from the Federal Public Works Administration. The defendant board then passed the proper resolution providing for the submission again of the question of said bond issue to the electorate of Vinton County, this time at a special election to be held on September 20, A. D. 1938. All of the proceedings in connection with such special election were duly completed and carried out according to law, with the exception of the fact that the board of elections combined and consolidated eleven (11) of the regular voting places of said county into five (5), thus reducing the total number of voting places in said county from twenty-four (24) to eighteen (18) for the purposes of this special election. Thirteen (13) of the regular voting places in the county were entirely unaffected by the action of the Board of Elections and were open for said special election exactly as they had been for the primary election just preceding. In this special election all of Hamden Village voted in the south precinct, the north precinct not being opened; all of McArthur Village voted at the southwest precinct, the east and northwest precincts not being opened; all of Richland Township voted at the northwest precinct, the southeast precinct not being opened; all of Vinton Township voted in the east precinct, the west precinct not being opened; and all of Wilkesville east precinct and Wilkesville corporation voted in the corporation precinct, the Wilkesville east precinct not being opened. At said special election in said county a total of 2,701 ballots on this bond issue were voted, 1,857 in favor of the bond issue and 844 against the bond issue. The votes favorable to the bond issue being more than 65% of the total votes cast on said issue, the bond issue was approved. (Plaintiffs' Exhibit A contains the total vote by precinct on said bond issue at the primary and also at the special election.) On September 22, 1938, the board of elections of Vinton County, Ohio, issued its official certificate of the result of said special election to the proper state and county officials, including the defendant herein. Said certificate among other things contained the following: "Whole number of votes cast —2,701. For the bond issue—1,857. Against the issue—844."

Thereupon the defendant board, pursuant to the approval of said bond issue, proceeded to arrange for the demolition of the old and the construction of the new court house; the contract for the demolition of the old court house was awarded on October 17, 1938; removal of county offices from the old court house was begun on October 17th and between that date and October 22nd all of the county offices save two were completely removed from the old court house; demolition of the old court house was begun on October 22nd; and on October 24th the two county offices not already removed were then totally removed from the old building.

This suit was filed on October 24, 1938; by agreement of counsel it was first heard

on the application for a temporary restraining order on October 31, 1938; immediately after said preliminary hearing, and prior to the decision of this court on said application for a temporary order, plaintiffs arranged for a change of counsel, and thereupon an agreement was reached by plaintiffs' present counsel, defendant's counsel, and the court, whereby the application for a temporary order would be given no further consideration and the case would be finally submitted on its merits at McArthur, Vinton County, Ohio, on Thursday, November 10, 1938. At said agreed time and place this case was fully and finally submitted on the petition, motions, demurrer, answer, and evidence (most of which evidence is an agreed statement of facts.)

The action of the Vinton County Board of Elections in combining said precincts, as aforesaid, was admittedly taken in good faith and for the sole and only purpose of reducing the total cost of said special election. The polling places designated in the combined precincts were in every instance convenient to the electors of the combined precincts; in Hamden Village the two regular voting places were approximately two blocks apart; in McArthur Village the three regular voting places were located within five hundred feet of each other; in Richland Township the two regular voting places were on the same highway and situated approximately one mile apart; in Vinton Township the two regular voting places were very close; and in Wilkesville the regular voting places or two precincts combined were in the same room of the same building. Publication of the notice of the holding of said special election on said bond issue was made in strict accordance with law (see defendant's exhibits 1, 2, 3, and 4). The notice contained in the August 24th, August 31st, September 7th and September 14th issues of the Republican Tribune of McArthur, Ohio, was full and complete and included special and definite instructions to the voters in the precincts where some of the regular voting places were not to be open for this special election.

No objection to the combining of said precincts, or to the designated polling places in said combined precincts, was made to the board of elections by these plaintiffs, or by anyone else, prior to the election or at any subsequent time. The plaintiffs in fact participated in said special election, Mr. Thomas having voted in one of the combined precincts, McArthur, and Mr. Johnson having voted in Swan Township.

A few observations on the actual vote cast at said special election in comparison with the vote on the same question at the primary election are interesting and valuable. The total vote cast on said question at the special election (2,701) was 62.3% of the total vote cast on said question at the preceding primary election (4,327). In the eleven precincts voting at five designated regular voting places instead of the usual eleven, the total vote cast on said question at the special election equaled 64.3% of the total vote on the same question at the primary election, whereas in the thirteen unaffected precincts, voting at the usual and normal regular voting places, the total vote on said question at the special election equalled only 60.9% of the total vote on said question at the primary election. It is interesting also to note that in McArthur Village, where three regular voting places were consolidated into one, the total vote cast at the special election equaled 84.3% of the total vote cast on the same question in the primary election, whereas in the Wilkesville precincts, where the two regular voting places were in the same room of the same building, and where the designated voting place for the special election was in said same room, only 43.5% of the total vote in the primary election was cast on said question in the special election.

In the primary election 57% of the total vote was in favor of the bond issue, and at the special election 68.7% of the total vote was in favor of the bond issue. There was, therefore, a change in sentiment equal to 11.7%. It is again interesting to note that in the primary election in the eleven precincts combined in the special election, then voting at their eleven regular voting places, the vote in favor of the bond issue was 62.5% of the total vote. At the special election the per cent of the total vote in said precincts, then voting at five designated regular voting places instead of eleven, in favor of the bond issue was 74.2%, an increase of 11.7% over the primary vote. In the thirteen precincts voting at the same regular voting places at the special election where they voted at the primary election, the vote in favor of the bond issue in the primary was 52.5% of the total vote cast on said question and at the special election 63.7%, a net increase of 11.2% in favor of the bond issue.

It is also interesting to note that the most marked and violent changes of sentiment on the question of the bond issue, as reflected in the results of the primary and special elections, were in the precincts unaffected by the combination and consolidation by the board of elections, to-wit:

In Dundas Township, at the primary the vote was favorable approximately two to one, at the special election it was favorable approximately five to one; in Eagle Township at the primary it was favorable approximately two to one, at the special election it was favorable approximately five to one; in Elk Township at the primary election it was favorable approximately two and one-half to one, and at the special election it was favorable approximately eight to one; and in Zaleski Township it was unfavorable at the primary election approximately two to one, and at the special election it was favorable almost six to one.

There is only one issue in this case necessary for its full and final determination. Counsel for the plaintiffs in their very excellent and exhaustive brief have clearly and properly stated the issue to be as follows: "Does the admitted noncompliance with §2293-21, GC, in not opening six of the county's twenty-four precinct voting places at the special election render the election void, and must the threatened issuance of bonds be enjoined as not being authorized in the manner required by statute?" §2293-21, GC, reads in its pertinent part as follows: "The election shall be held at the regular places for voting in such subdivision. * * *."

The plaintiffs contend, most persuasively, that the failure in this case on the part of the Vinton County Board of Elections to strictly and completely comply with that part of §2293-21, GC, is fatal and that by reason thereof this court ▐▐▐▐▐▐▐ should grant the injunction prayed for. The court cannot subscribe to or agree with plaintiffs' conclusion on the facts in this case.

Substantial compliance was had in the instant case, and, in the opinion of this court, invalidating the results of said special election and enjoining the issuance of these bonds by reason of the lack of strict and complete compliance would be unjust, inequitable and unconscionable. It is admitted in this case that the action of the board of elections was in good faith and well motivated; that the polling places designated in the eleven combined precincts were in every instance practically as accessible and convenient to the electors of the affected territory as their regular voting places (certainly no appreciable inconvenience resulted); that full and proper notice of said special election was duly given; and that no objection was made by these plaintiffs, or by anyone else, to the consolidation of said precincts for said special election. No eligible voter of Vinton County was misled in any way by the consolidation of eleven voting places into five. No eligible voter was disfranchised or prohibited the right to vote; and no evidence whatsoever of any kind has been submitted in this case to indicate in any way that the result of said special election was affected or changed in any way, manner or form by the said consolidation of voting places. It is very important to note that a larger per cent of the primary vote was cast in the special election in the precincts combined than in the precincts left alone. That indicates no disfranchisement by reason of consolidation; in fact, it indicates exactly the opposite. The change of sentiment in favor of the bond issue, reflected at the special election, was virtually as great and favorable in the untouched and unaffected thirteen precincts as in the combined eleven precincts, being 11.2% increase in the unaffected and 11.7% in the combined. It is worth while to note that the change in sentiment in the unaffected precincts was more than enough, if carried throughout the county, to make the result of the special election what it was, and that the slight increase in favor in the combined precincts had no effect upon the election, that is, upon the passage of the bond issue. The very fact that the greatest changes in sentiment in favor of the bond issue were found in the unaffected precincts, as hereinbefore set forth, is to this court convincing testimony that the combination of precincts and the resulting elimination of six of the regular voting places did in no way affect the result of the special election; in fact, every bit of evidence in this case indicates that the result of the election would have been as favorable, or perhaps even more favorable, to the bond issue had all of the twenty-four regular voting places been opened instead of just eighteen.

In this special election neither the plaintiffs, nor anyone else, were deprived of any substantial rights. The error, that is, the lack of strict and complete compliance with §2293-21, GC, was technical and harmless, and it would be inequitable to enjoin this bond issue approved as it was, by reason of that legal and immaterial and inconsequential defect. The courts of Ohio have always held that errors in respect to elections made innocently and not ▐▐▐▐▐▐▐ in violation of the substantial rights of the electors are not grounds for invalidating an election. It seems that the test has been: Is the discrepancy or the error material and meritorious, or is it immaterial and technical?

Plaintiffs have cited some authorities in

their brief which require consideration. However, plaintiffs' citations of cases found in **11 Oh St 183, and 18 Oh St 49**, are not believed important for, although they are interesting. on the general subject under consideration, they are not decisions on the Uniform Bond Act of Ohio, and since the Supreme Court of Ohio has considered the Uniform Bond Act in at' least a few important cases, it is felt that the older cases are of relatively little value. Also, it is felt that plaintiffs' citation of **125 Oh St 251** is irrelevant inasmuch as that case has to do with the sufficiency of a declaration of candidacy and a nominating petition for party central committee, and by reason thereof, is not helpful to us in this case.

This court is in complete accord and agreement with the decisions of the Supreme Court of Ohio in the cases of **State ex Jackson v Board of County Commissioners of Fayette County, 122 Oh St 456, and State ex Curren v Rees, Director. of Finance, 125 Oh St 578.** Those cases 'involve the same sections of the Code we are considering, and the facts in each of said cases certainly warrant and require the decision of the court to be as it was in each case. The facts and the resulting decisions in each of said cases are clearly distinguishable from the facts of the case at bar, and the decision of this court in this case is not in any way inconsistent with or in opposition to the holdings of the Supreme Court in those cases.

In the Fayette County case no statutory notice of the election was published as provided for in §2293-21, GC. In the opinion of the court, written by Judge Allen and concurred in by all of the members of the court, we find the following:

"Are the provisions of §2293-21, GC, providing for publication of notice of elections, mandatory or directory * * *."

"**The question involved here is not one of substantial compliance with the statute.** (Emphasis ours). We have not the case of some mere clerical defect in publication, or failure to publish for the entire statutory period. It is conceded· that no notice whatsoever was given as provided under the section."

"The purity of elections necessarily is dependent upon the knowledge and notice that the individual voter has of the character, time and place of each particular election."

"Moreover, even though the election had been regular, no clear legal duty rested upon the county commissioners to issue the bonds. Hence the writ will be denied."

The noncompliance in that case was certainly most substantial and meritorious; no statutory notice at all was given. The voters of Fayette County had no proper legal notice of the election. Certainly all would admit that to be a fatal defect, a defect which would prevent a fair and honest consideration of and expression on the question. The decision is no broader for the purposes of establishing law of this state than the facts of the particular case require. The language of the court was somewhat broad in interpreting the language of the statute in question as being mandatory, but the court made the very important statement that "the question involved here is not one of substantial compliance with the statute." We feel that the instant case is one of substantial compliance and that the Supreme Court of Ohio, by its very language in the Fayette County case, anticipated the possibility of such a case as the one at bar, and left the way open for reaching a different conclusion in such a case.

In the **City of Lakewood** case **125 Oh St 578**, other sections than §2293-21 GC, of the Uniform Bond Act were involved. In that case the court said in its opinion, quoting from the journal entry of the Court of Appeals:

"The court finds that the respondent who is the fiscal officer of the City of Lakewood refused to sign the bonds and affix the corporate seal thereto' because of the discrepancy in the maturity dates as set forth in the proceedings."

"Resolution No. 2566 provides for twenty-two years (22); ordinance No. 3020 provides for twenty-five years (25); * * * notice of election twenty-two years (22); ballot submitted to the electors twenty-five years (25); * * *."

"* * * and the court holds that a substantial compliance with the provisions of the so-called Uniform Bond Act is not sufficient and that **such discrepancy as exists in the instant case is material** (Emphasis ours) and impairs the validity of the proceedings in connection with the bond issue."

In that case the court was undoubtedly correct in finding the discrepancy to be material and meritorious; such a discrepancy would undoubtedly mislead the voters and cause them not to know what the issue they were going to vote upon actually was. Again it must be remembered that the de-

cision is no broader than the facts require, and that the court in its opinion said, "* * * such discrepancy as exists in the instant case is material and impairs the validity, etc. * * *." There again the court indicates the test to be whether or not the discrepancy is material. We agree that in the Lakewood case the non-compliance was material, but in the case at bar we feel it was not material.

It must also be remembered that each of the above discussed Supreme Court cases was an action in law to mandamus certain officers to do an act which they did not want to do, whereas the instant case is a suit in equity to enjoin action by county officials which they do want to do. The difference in the relief sought, the difference in the manner in which it is sought, and the very great and substantial difference in the facts in the considered cases, warrant and, in our opinion, demand a different conclusion.

The case of **Mehling v Moorehead, 133 Oh St 395, 11 O.O. 55,** is not relevant for the reason that it is an election contest of the office of mayor of the City of Zanesville, based entirely on the charter of said city. However, the court in its opinion has much to say about related subject matters, such as our own case, and since counsel for the plaintiffs has quoted from the opinion of the court in that case, it is felt that further quotations from the court's opinion in said case might be interesting. The opinion contains among other things the following:

"So in this case, the election, having been held, should not be disturbed when there was full opportunity to correct any irregularities before the vote was cast. Strictly speaking, all provisions of election laws are mandatory in the sense that they impose the duty of obedience upon those who come within their purview. but irregularities, which were not caused by fraud and which have not interfered with a full and fair expression of the voters' choice, should not effect a disfranchisement of the voters.

"Where there has been a substantial compliance with the law and no showing that the omission of instructions changed the result in any manner, such provisions of the charter of Zanesville as the one before us must be considered merely directory after the election.

"There having been a substantial compliance with the law, the voters should not be penalized by an irregularity where there is no showing that the result was in any way affected by reason of it. Our holding is in accordance with the tendency of this

court to insist that all formal objections which can be made should be made seasonably before an election, but that after an election, unless it is shown that the result was contrary to the will of the electorate, it will not be disturbed."

Plaintiffs' use of the opinion in said case is appreciated and the fact that the court distinguished between cases affecting taxpayers on the one hand and the election of officials on the other hand is fully understood. However, it must be remembered that all of the court's language in said opinion on all subjects other than the one necessary for decision was **dictum**, and that the only actual decisions relevant to the subject in our case on which the court could have been basing its talk were the Fayette County and the City of Lakewood cases, in which cases we have distinguished the facts from those of the case at bar and fully agree with their conclusions.

In the instant case the special election was held at eighteen of the twenty-four regular voting places; no inconvenience or injustice resulted; no change was made in the election by reason of the fact that eighteen instead of twenty-four regular voting places were used. Surely that is a sufficient substantial compliance to permit this court to leave the result of the election as it has been officially certified. Admitting the language of the statute to be mandatory, still a court of equity should not follow that interpretation to reach an unjust and unfair conclusion. This is the kind of a case Judge Allen anticipated in her opinion in the Fayette County case—that of some mere technical, immaterial and unsubstantial defect, in which case she at least by inference indirectly indicated the decision might well be different.

The court being of the opinion that the statute was substantially complied with in this case, that no substantial rights were injured or damaged in any way, and that the special election resulted in complete and substantial justice to all the electors of Vinton County, including these plaintiffs, who, it must be remembered, made no objection to the consolidation of precincts, participated in the election, and then waited until October 24th to begin this proceeding, and all others similarly situated, concludes that the injunction should be denied and the plaintiffs' petition dismissed.

The will of the Vinton County electorate has been fully and fairly expressed; this court of equity will not set it aside and cause the electorate of Vinton County ad-

ditional time, trouble and expense to express it again.