THE CITY OF CINCINNATI *v.* PUCHTA, MAYOR, ET AL.

PUCHTA, MAYOR, ET AL. *v.* THE CITY OF CINCINNATI.

*Municipal corporations — Bonds for park purposes — Election there-on — Sections 4064 and 4065, General Code — Publication of notice — Section 3946, General Code — Limitation of municipal indebtedness — Section 3952, General Code.*

(Nos. 15265 and 15266 — Decided July 1, 1916.)

ERROR to the court of Appeals of Hamilton county.

*Mr. Charles A. Groom,* city solicitor, for the city of Cincinnati.

*Mr. Saul Zielonka* and *Mr. John E. Bruce,* for George Puchta, mayor, et al.

BY THE COURT.   Both cases involve this question:   An election was held on the issue as to whether or not certain bonds should be issued for park purposes.   Notice of such election was given to the qualified electors of the city of Cincinnati upon an advertisement for "four consecutive weeks in a newspaper printed in the municipality covering the period of 26 days prior to the day of election, to-wit, November 2, 1915."   Did such notice legally comply with Section 3946, General Code? That section reads as follows:

"Thirty days' notice of the election shall be given in one or more newspapers printed in the municipality once a week for four consecutive weeks

prior thereto, stating the amount of bonds to be issued, and the purpose for which they are to be issued, and the time and place of holding the election."[2]

This notice was not published for thirty days, but was published once a week for four consecutive weeks.

We believe this publication to be in substantial compliance with the statute, especially when we come to consider the last part of Section 3946, to-wit:

"If no newspaper is printed therein, the notice shall be posted in a conspicuous place and published once a week for four consecutive weeks in a newspaper of general circulation in the township or municipal corporation."

The chief purpose of this statute is evident, to-wit, four weekly publications. And these were made. We do not hold that in all cases such would be a sufficient compliance with the law, but in the absence of any allegation here that anybody was denied the right to vote, by reason of the statute not being literally complied with for the full thirty days, the regularity of the election proceedings is upheld.

A second proposition involved in one, or both, of these cases is the question of limitation upon the amount of bonds.

The city council failed to issue bonds upon its own initiative. Thereupon, pursuant to Section 4064, General Code, the board of park commissioners took such action as was required by that section. The city council having failed to enact

the necessary legislation, the board of park commissioners filed their resolution, and the favorable action thereon, with the board of deputy state supervisors and inspectors of elections and the election was had thereon, a majority of the voters voting at such election declaring in favor of the issuing of the bonds.

Section 4065 provides:

"If a majority of the electors voting on such question vote in favor thereof, it shall become the duty of the council of the city to enact, within ninety days thereafter, all legislation necessary to carry into effect the will of the majority of the voters at such election."

It is quite apparent that neither Section 4064 nor Section 4065, General Code, provides that the issue shall be within the $2\frac{1}{2}$ per cent. limitation, and the question, therefore, arises whether this issue is within the 5 per cent. limitation; or whether the $2\frac{1}{2}$ per cent. limitation or the 5 per cent. limitation, provided in Section 3952, governs.

We believe this question has already been determined by this court in the case of *Henderson* v. *City*, 81 Ohio St., 27, 31, in favor of the $2\frac{1}{2}$ per cent. limitation:

"Section 6 of the park commission act contains no suggestion that it was intended to authorize, either the city council, or the park commission, or both acting together, to issue bonds in excess of four per cent. of the taxable value of the property of the city without authorization by two-thirds of the voters of the city. That section obviously was

not intended to modify the preceding legislation in this regard in any respect. Its object was to provide for the contingency of a difference of views between the park commission and the municipal council respecting the proposed issue of bonds for park purposes within the limit of four per cent. of the taxable value of the property of the city. In other words, the favoring vote of a bare majority, as contemplated in the later legislation, was not intended as a substitute for the two-thirds vote required by the previous legislation, but was only to be substituted for the favorable action of the city council, when it refuses to act favorably upon the recommendation of the park commission."

We do not believe this is *obiter dictum.* It is germane to the question before the court. It is in accordance with sound reason and the evident purpose of the several statutes.

*Judgments affirmed.*

NICHOLS, C. J., JOHNSON, DONAHUE, WANA-MAKER, NEWMAN, JONES and MATTHIAS, JJ., concur in cause No. 15265.

DONAHUE, WANAMAKER, JONES and MATTHIAS, JJ., concur in cause No. 15266.