THE STATE, EX REL. THE CLEVELAND TRUST CO., *v.*
EGGERS ET AL.

(Decided December 3, 1928.)

*Mr. G. M. Cummings,* for plaintiff.
*Messrs. Hartshorn & Thomas,* for defendants.

SULLIVAN, P. J.   This is a proceeding in mandamus brought originally in this court by the plaintiff, the State of Ohio, ex rel. The Cleveland Trust Company, against the board of education of Cleveland Heights, situated in Cuyahoga county, and the

question to be tested is: Does a writ of mandamus lie to compel the board of education to issue and sell certain municipal bonds, and, out of the proceeds thereof, to pay certain notes and interest thereon, held by the Cleveland Trust Company, as owners against the board of education of Cleveland Heights, notwithstanding there has not been a strict conformity to Section 5649-5$a$ of the General Code of Ohio, relating to the issuance and sale of municipal bonds, with respect to the provisions concerning the publication of the notice of election in one or more newspapers of general circulation for four consecutive weeks prior to the election? This is the only alleged defect in the proceedings for the issuance and disposal of the bonds by the defendants.

From the agreed statement of facts and the pleadings in the case it is conceded that in all other respects the procedure relating to the issuance and sale of the bonds was in strict conformity to the provisions of the statute. Therefore the only question to consider is whether the defect or oversight relative to the publication of notice is sufficient to invalidate the bonds. Under the record there is no taxpayer or voter raising his voice in objection, and there is no claim or charge of collusion, deceit, or fraud. Therefore in no sense is there any taint of dishonesty relating to the procedure for the issuance and sale of the bonds in question, or to any other matter or thing in connection therewith.

It is unnecessary to recite from the record the various legal steps taken under the provisions of the statute relating to the subject-matter, because no question is raised which applies thereto, and thus the only vital question for consideration is the notice

to electors as provided for under Section 5649-5*a*, General Code.

It appears from the record that on August 30, 1926, the board of education of Cleveland Heights passed a resolution declaring it necessary, for the purpose of erecting schoolhouses, and school buildings, and purchasing sites therefor, to issue bonds in the sum of $800,000, and one of the provisions of the resolution of necessity was that the question of the issuance thereof, and the levy of the taxes in connection therewith, should be submitted to the electors at the next November election, which was November 2, 1927. Conforming to the statute, notice of the election for the issuance of these bonds was given for four consecutive weeks in a newspaper of general circulation in the school district, known as the "Heights Press," and this notice appeared in the issues of October 8, 15, 22, and 29. This notice was in strict conformity to the law, so far as the record is concerned, unless the period of time over which the notice ran, from October 8 until November 2, being 25 days instead of 28 days, resulted in the invalidity of the bonds.

It appears by the record that on March 15, 1927, the board authorized the issuance of bonds in the sum of $250,000, out of the total authorized amount of $800,000, and in the same session a resolution was passed authorizing the issuing of notes in the sum of $245,000, in anticipation of the sale of the $250,000 of bonds authorized, as aforesaid, out of the total sum declared to be necessary under the resolution of August 30, 1926. Under the authority of the resolution, the money was borrowed on these notes from the Cleveland Trust Company, and one note,

in the sum of $185,000, was due September 30, 1927. The remaining note of $60,000 became due and payable December 31, 1927. The note of September 30, 1927, as appears by the record, is in default, and the board of education has not yet proceeded to issue and sell bonds to pay the note, although it was so authorized by the passage of the resolution, which provides that the note should be paid from the proceeds of the sale of bonds. Thus this proceeding is to compel the board of education to issue and sell these bonds in order that the proceeds may be applied to the payment of these notes to the Cleveland Trust Company.

Adverting to the vital question, to wit, that there were only 25 days instead of 28 days in the period of time from the date of the first publication until election day, it is necessary to consider the facts as they concededly appear of record. Notices were posted throughout the school district warning the electors of all the details of the proposed issue, and, in addition thereto, circulars giving full information to the electors were passed throughout the subdivision through the instrumentality of pupils attending the schools, and, in addition thereto, the newspapers continuously kept the voters fully informed as to the project and purpose of the issue of the bonds. Added to this, the board of education distributed to the voter its own argument in favor of the necessity of the bonds, and the record abounds with evidence that in various ways of a similar nature the board of education not only acted in good faith with the electors, but did everything in its power to instruct, interest, and notify all the voters in the subdivision as to the purpose and intention of the bonds, and

as to the arguments for and against, and thus it may be said that it is conclusive from the record that no one was disfranchised because of the three-day discrepancy impregnating the four publications as provided by law between the date of the first publication of notice and election day.

It further appears, bearing upon this salient feature of the case, that with two exceptions the vote on the school bonds was greater than the total vote of any candidate running for office on election day, November 2, 1927.

It is disclosed by the record that there were bitter contests for county offices at this election, and this fact, with many others, resulted in a large attendance at the polls, and thus it becomes an established fact that so universally was the knowledge of the vote upon the bonds distributed amongst the body of voters that not a single gesture appears in the record of the disfranchisement of any voter, or of the lack of knowledge on the part of the electorate as to the submission of the question as to the bonds. Thus the evidence is conclusive that the three-day deficiency was a matter so minor and so trivial that it had no effect, substantial or otherwise, upon the election, and it in no wise appears that, had the publication been over a period of 28 days instead of a period of 25 days, the result would have been in any wise whatsoever different than the actual result.

It is well settled law in Ohio that the requirements of the statute in question are of a directory and not of a mandatory nature. If it were otherwise, it would be almost impossible to provide for the issuance of bonds under statutory procedure without invalidating them, and thus creating con-

fusion, chaos, and financial injury to all parties to the transaction, and harm to the body politic, because, with all the specific provisions of the statute relating to the issuance and sale of municipal bonds, the creeping in of technical errors and inaccuracies is almost impossible to avert, because of the human element having control and direction of all the details connected with the work.

The vital question here is determined after a view of the entire case, and when every provision of the statute was complied with, excepting this one three-day publication defect, it would be absurd to say in the light of the entire record that the three-day deficiency was of such legal avail as to invalidate the bonds. Such a conclusion would be doing violence to sound reason, and would be at war with common sense, as well as opposed to the authorities and precedents in similar cases, which we are bound to follow for the reason that they are so universal that they have become authoritative.

In *Cincinnati* v. *Puchta, Mayor,* 94 Ohio St., 431, 115 N. E., 278, the statute involved was Section 3946, General Code, which read:

"Thirty days' notice of the election shall be given in one or more newspapers printed in the municipality once a week for four consecutive weeks prior thereto, stating the amount of bonds to be issued, and the purpose for which they are to be issued, and the time and place of holding the election."

This notice, in an attempt to conform to this particular statute, was published once a week for four consecutive weeks, which would be 28 days instead of 30 days. The judgment of the Court of Appeals was affirmed by the Supreme Court in a *per curiam*

opinion, concurred in by Nichols, C. J., Johnson, Donahue, Wanamaker, Newman, Jones, and Matthias, JJ., and the court held that the publication once a week for four consecutive weeks, instead of for 30 days, as the statute specified, was a substantial compliance with the law, and this interpretation is especially applicable to the facts in the case at bar, where no newspaper was printed in the vicinity in question.

"If no newspaper is printed therein, the notice shall be posted in a conspicuous place and published once a week for four consecutive weeks in a newspaper of general circulation in the township or municipal corporation." Section 3946, General Code.

Under above statute, as under the statute in question in the case at bar, the prime purpose is obvious, and that is that there should be four weekly publications. They were made in this case, as in the *Puchta case, supra,* and the judgment is undoubtedly based on sound reasoning, for the absence of collusion, fraud, deceit, and disfranchisement outweighs the mere fact that the statute was not literally complied with because of a discrepancy of two days in the *Puchta case, supra,* and of three days in the case at bar.

In *Foster* v. *Scarff,* 15 Ohio St., 532, in a case where a sheriff in his election proclamation made no mention of an election to fill the vacancy in the office of probate judge, and the charge was made that the attempted election was irregular and invalid, Chief Justice Brinkeroff, one of our ablest judicial authorities, used the following language, at page 537, which is applicable to the case at bar. We quote:

"In deciding this case, however, we do not intend to go beyond the case before us, as presented by its own peculiar facts. We do not intend to hold, nor are we of opinion, that the notice by proclamation, as prescribed by law, is *per se,* and in all supposable cases, necessary to the validity of an election. If such were the law, it would be in the power of a ministerial officer, by his misfeasance, always to prevent a legal election. We have no doubt that where an election is held in other respects as prescribed by law, and *notice in fact* of the election is brought home to the great body of the electors, though derived through means other than the proclamation which the law prescribes, such election would be valid."

*Link* v. *Karb, Mayor,* 14 N. P. (N. S.), 244, affirmed by the Court of Appeals, was affirmed by the Supreme Court of Ohio in 89 Ohio St., 326, 104 N. E., 632, where the court held valid certain municipal bonds which were questioned because the statute which provides that the polls should remain open until 6 p. m. was violated, and the polls closed 30 minutes before the regular statutory closing time. It was held by the court of common pleas that this circumstance was not sufficient, in the absence of fraud, or a showing that the result would have been different, to invalidate the election, and that court said in its opinion, at page 246:

"An examination of the authorities discloses that the general view is [referring to the statute with reference to time of voting] that such a statute is directory, and that before any election can be set aside because of deviation from the statute, it must be shown that legal votes were excluded or illegal

votes received in consequence thereof. A slight deviation from the direction of the statute in this respect will not render void the election unless it is fraudulent and operated to deprive legal voters of their rights."

The common pleas court further says, at same page: "All provisions of law relating to elections when sought to be enforced after election are held to be directory merely, if this is possible. It is therefore generally held that statutes relating to the manner of conducting the details of an election, are not mandatory but directory merely. This is so unless a non-compliance is expressly declared to be fatal to the validity of the election, or will change or make doubtful the result. * * * Hence irregularities in conducting an election will not vitiate it, unless they are shown to be such as to affect the final result."

There are many other opinions which bear out our reasoning according to our judgment in the case at bar. In *Fry* v. *Booth,* 19 Ohio St., 25, involving the validity of an election where the officers closed the polls one hour at noon, and went to dinner together, when the statute required the polls to be open from 10 a. m. to 6 p. m., the election was validated.

We also call attention to *Rogers* v. *Board of Education,* 18 Ohio App., 493, and quote paragraphs 1 and 2 of the syllabus, as follows:

"1. The notice provided for in Section 5649-5a, General Code, and Section 2 of the Taft Law, passed April 29, 1921 (109 O. L., 307), relative to an election on the question of increasing tax levies, is directory, but not jurisdictional, as far as the election and levy are concerned.

"2. The publication of a legal notice, prepared by a board of education, notifying the public that a vote would be taken authorizing a tax levy of one-half mill beyond eighteen mills, the limitation under the law for all and school purposes, which notice was framed under the act of April 29, 1921 (109 O. L., 307), which permits electors to vote such a levy, does not invalidate the election or proceedings, although the eighteen mills limitation had not been exhausted and would not be by the levy of the one-half mill, where the additional levy was voted for by a majority of the electors, who, as shown by the evidence, were not misled by such notice."

It is our judgment that this rule of construction is not only authority in Ohio, but is generally universal. The doctrine of substantial compliance, taking into consideration all the facts and circumstances of the particular case, from a view of the authorities, applies not only to statutory, but to constitutional, provisions, and, as to foreign jurisdiction, we cite 20 Corpus Juris, page 99, Section 84, and 9 Ruling Case Law, 992, 993, 994; and, upon the doctrine applying to constitutional questions, as well as to statutory, we call attention to *State, ex rel. Thompson, Atty. Gen.,* v. *Winnett,* 78 Neb., 379, 110 N. W., 113, 10 L. R. A. (N. S.), 149, 15 Ann. Cas., 781, where the question of the construction of the provisions of the state constitution came up with respect to proposed amendments. The constitution of Nebraska requires publication of notice at least once each week for three months in a newspaper in each county where a newspaper is published, preceding the election of members of the national assembly. In one county the publication was one week less

than that required by law, and, with that situation in mind, and with that defect in the record, we find the following in the syllabus in that case, applicable to the case at bar:

"The self-imposed limitations on the power of the people to amend their fundamental law should not be so construed as to defeat the will of the people, plainly expressed, on account of a slight and unimportant failure to comply literally with such limitations, if the requirements are substantially observed."

The court, in the body of the opinion, says to hold the election invalid would be to defeat the will of the people "by an unimportant accident over which they had no control. If other provisions of the constitution are mandatory and are to be taken literally, those provisions by which the people have consented to place restrictions upon their own power in adopting amendments to the constitution should not be so construed. We should inquire into the fair purpose and meaning of such restrictions, and should regard the substance rather than the letter of such requirements."

The notice under discussion in the case at bar provided that the bonds should run for 24 years, and that during that period of time an additional levy of .4105 mills would be certified. The ballot stated .4105 mills for a period of 20 years in which to pay the principal and interest on such bonds, and it is argued that this was such a discrepancy that it tainted the bonds with invalidity. When it is observed, however, that the additional rate is the same on the ballot as it is in the notice, then the remaining fact derivable from the situation is that the proposi-

tion on the ballot was more favorable than the one incorporated in the notice of election, and thus the situation was in favor of, instead of against, the electorate. However this may be, keeping in mind as herein noted the fact that there is no claim of fraud, deceit, collusion, or dishonesty, or that the result would be different, the discrepancy, as in the case of the alleged three-day defect, becomes an atom so minute that any foundation for legal discussion is scarcely visible.

Holding these views a peremptory writ of mandamus is allowed in accordance with the prayer of the petition.

*Writ allowed.*

VICKERY and LEVINE, JJ., concur.