Zimmerman, J.
 

 In this action in mandamus originating in this court and submitted for final determination upon the demurrer to the amended petition, the Board of Education of the Springfield Local School District, Summit county, Ohio, and an individual taxpayer of §uch district, as relators, seek a writ requiring the respondent, the clerk of such board, to sign, execute and, when signed by the board president, deliver certain bonds to the successful bidders at the price at which they were sold. The prayer of the amended jietition also asks for a declaration that the bonds are legal and valid obligations of the board.
 

 It is averred in the amended petition that on August 10, 1943, the board of education referred to, passed a resolution declaring the necessity of a bond issue of $240,000 to build and equip a high school building and declaring that such bond issue be submitted to a vote of the electors at the election on November 2, 1943; and that this was done and the bond issue was approved by more than 65 per cent of those voting thereon.
 

 The allegations of the amended petition show that the provisions of Section 2293-19
 
 et seq.,
 
 General Code, a part of the Uniform Bond Act, were complied with except: (1) The first notice of the election at which the bond issue was to be voted on was published less than 28 days before the election; (2) the resolution of necessity and the resolution determining to proceed with the election provided for a maximum maturity of 20 years (40 semiannual maturities beginning April 1, 1945), whereas the bonds sought to be issued have an actual maximum maturity of 22 years and the notice of
 
 *567
 
 election and the ballot provided for a tax levy for a maximum period of 22.5 years.
 

 Are such variances material and of sufficient gravity to justify the respondent in refusing to act in accordance with the prayer of the petition?
 

 As to the first ^question, notice of the election on the bond issue was advertised on October 8, 15, 22 and 29, 1943, in a newspaper of general circulation in the school district. Such notice contained the information that the matter of the bond issue would be submitted at the election to be held on November 2, 1943, stated the purpose of the bond issue, the amount thereof and that a levy, would be required outside the constitutional ten-mill limitation “estimated by the county auditor to average 2.86 mills for each one dollar of valuation, which amounts to 28.6 cents for each one hundred dollars of valuation, for a maximum period of 22.5 years to pay the principal and interest of such bonds.”
 

 Section 2293-21, General Code, provides in part:
 

 “Notice of the election shall be published in one or more newspapers of general circulation in the subdivision once a week for four consecutive weeks prior thereto * *
 

 Most of the cases hold that if there is
 
 no
 
 compliance with statutory provisions as to the giving of notice of an election pertaining to a bond issue, the election is rendered invalid.
 
 State, ex rel. Jackson,
 
 v.
 
 Board of County Commrs. of Fayette Co.,
 
 122 Ohio St., 456, 172 N. E., 154. However, where there is substantial compliance with the statutory requirements and there is nothing to indicate that the result of the election might have been different had there been full compliance, the election will not be invalidated.
 
 City of Cincinnati
 
 v.
 
 Puchta, Mayor,
 
 94 Ohio St., 431, 115 N. E., 278; 43 American Jurisprudence, 340, Section 86; 119 A. L. R., 661
 
 et seq.,
 
 annotation.
 

 The chief purpose of Section 2293-21, General Code,
 
 *568
 
 is evident, to wit, four weekly publications preceding the election. These were made in the instant ease. The notice of the election having been given in substantial compliance with the statute, the defect pointed out was not of sufficient moment to justify a holding that such notice was inadequate.
 

 As to the second question, the discrepancy challenged is the difference between the maximum maturity of 20 years set forth in the resolutions passed under Section 2293-19, General Code, and the maximum number of years for the tax levy as set forth in the notice of the election and on the ballot, which in each instance was 22.5 years.
 

 Again, the question arises whether the difference noted is of such a material nature as to nullify the proceeding. Under Section 2293-19, General Code, the resolution of necessity need not be absolutely definite as to the “date, interest rate and maturity” of the bond issue; it is sufficient if these items be stated
 
 approximately.
 
 The statute then directs that the resolution be certified to the county auditor for specified calculations. Whereupon, if the taxing authority desires to proceed with the bond issue, it must certify its resolution, together with the calculations made by the auditor, to the deputy state supervisors of elections of the county, who shall prepare the ballots and make other arrangements for the submission of the question to the voters of the territory involved.
 

 Frankly, we find difficulty in discerning anything seriously amiss in this case. The resolution of necessity, in giving the maximum maturity of the bonds as 20 years, satisfied the provisions of Section 2293-19, General Code, requiring only an approximate estimate. The notice of the election and the ballot stated plainly that the tax levy to pay the principal and interest of the bonds would extend over a maximum period of 22.5 years. There was no radical departure from the
 
 *569
 
 terms of tlie statute and no interested or affected person could reasonably complain that he was misled or deceived.
 

 It has been generally held that defects, variances and irregularities in the several steps relating’ to the issuance of bonds should be material, harmful or both before the proceeding may be successfully attacked. See 5 McQuillin on Municipal Corporations (2 Ed.), 363, 1025 and 1035, Sections 2035, 2263 and 2264. It has also been held that unsubstantial irregularities in the resolution of a political subdivision inaugurating an election on a bond issue which do not prejudice anyone will be disregarded, especially where the proposed bond issue as submitted was approved by considerably more than the requisite number of electors. 43 American Jurisprudence, 333, Section 76. Compare
 
 Board of Education of Ashville Village School Dist., Pickaway County,
 
 v.
 
 Briggs, Aud.,
 
 114 Ohio St., 415, 151 N. E., 327.
 

 This brings us to the case of
 
 State, ex rel. Curren, Dir. of Law,
 
 v.
 
 Rees, Dir. of Finance,
 
 125 Ohio St., 578, 183 N. E., 432, relied upon by the respondent for her refusal to sign and execute the bonds. The
 
 per curiam
 
 opinion in that case affirmed the judgment of the Court of Appeals and consists almost entirely of a quotation of the journal entry of such court.
 

 In the
 
 Curren case
 
 the maximum maturity dates of bonds to be issued for hospital purposes were stated in three instances as 22 years and in three other instances as 25 years. The notice of election gave the maximum maturity dates as 22 years' and on the ballots such dates were given as 25 years. Surely, a conflict of that kind was confusing to the voters and of a questionable enough character to warrant the court in reaching the conclusion “ ‘that such discrepancy # *
 
 *
 
 is material and impairs the validity of the proceedings in connection with the bond issue.’ ”
 

 
 *570
 
 Chief Justice Weygandt, referring to the
 
 Curren case
 
 in the opinion in
 
 State, ex rel. City of Delaware,
 
 v.
 
 Main, Mayor,
 
 129 Ohio St., 239, 194 N. E., 454, stated:
 

 “The court held simply that the provisions of that general act [the Uniform Bond Act] should be construed with sufficient strictness to prevent the issuance thereunder of bonds whose maturities had been left in doubt by reason of a discrepancy in the various steps taken during the proceedings.”
 

 Here, as has already been pointed out, no real defect existed in the original resolution and the voters were not confused by the notice of the election or by the ballot issued to them, which were in no wise contradictory. With definite information as to what they were voting for, the voters approved the bond issue by a vote of 883 to 473. We believe there is enough difference in the facts of the present case and of the
 
 Curren case
 
 to distinguish them.
 

 In our opinion the bond issue of the relator Board of Education of the Springfield Local School District is without invalidating infirmities and would constitute a valid and legal obligation of the district when properly executed. The relators are entitled to prevail in this action. Consequently, the demurrer to- the amended petition is overruled and the writ may issue as prayed for.
 

 Writ allowed.
 

 Weygandt, C. J., Bell, Williams, Turner and Hart, JJ., concur.