THE STATE, EX REL. BD. OF EDN. OF THE PLAIN LOCAL SCHOOL DISTRICT, *v.* McGLYNN, CLERK OF THE BD. OF EDN.

(No. 2669—Decided March 10, 1955.)

*Mr. John Rossetti,* prosecuting attorney, and *Mr. William H. Allen,* for relator.

*Mr. William R. Quinn,* for respondent.

McCLINTOCK, J.  This is an action commenced in this court for a writ of mandamus filed by relator to command the respondent to comply with the provisions of a bond resolution and Sections 133.33 and 133.35, Revised Code, by certifying a copy of such resolution to the county auditor, causing the bonds to be advertised for public sale, receiving bids for the purchase of the bonds in accordance with such advertisement, and for all other and further relief to which the relator may be entitled.

To this petition the respondent filed an answer, which reads as follows:

"Now comes Robert McGlynn, clerk of the Board of Education of the Plain Local School District, Stark County, Ohio, as respondent, and hereby waives issuance and service of summons and enters his appearance herein, and files this answer to relator's petition for a peremptory writ of mandamus.

"Respondent for his answer admits sections (1), (2), (3),

(4), (5), (6), (7), (8) and (9) of relator's petition, but denies generally each and every allegation in said petition contained, except such as are herein specifically admitted to be true.

"Respondent further denies section (10) of relator's petition, and specifically denies that the electors of said school district were fully informed of:

"(A) The purpose of the proposed bond issue.

"(B) The estimated average additional tax rate necessary to pay the interest thereon and to retire the same expressed in:

"1-cents for each one hundred dollars of valuation.

"2-mills for each one dollar of valuation.

"(C) That the notice of election set out at section (5) of relator's petition complied substantially with all lawful requirements.

"(D) That the omissions from the notice of election, when taken with the full text of the election notice and the statements in the ballot and exhibits A to H did not prejudice or mislead any voter entitled to vote upon said bond issue, as to the nature of the bond issue or of the indebtedness to be incurred thereby.

"Respondent by way of answer says further there were numerous errors in the notice of election of this bond issue as the same appeared in the Canton Repository; thus relator failed to comply with Section 133.11, Revised Code, for the reason that the advertisement:

"(a) Failed to clearly state, 'the purpose for which such bonds are to be issued.'

"(b) Failed to correctly state 'the estimated average additional tax rate, expressed in dollars and cents for each one hundred dollars of valuation,'

"(c) and altogether failed to mention a further requirement of the statute, to wit: 'as well as in mills for each one dollar of valuation.'

"Respondent says further that because of errors in the notice of election referred to above, the bonds in question are illegal and invalid, the legislation and proceedings under which the relator attempted to issue the same are void, and it would be improper for him to take the action demanded by relator; that is, to comply with the provisions of the latest bond resolution of relator and with Sections 133.33 and 133.35 of the Revised Code of Ohio, by certifying a copy of said resolution to

the county auditor and causing said bonds to be advertised for public sale and receiving bids for the purchase of such bonds, in accordance with such advertisement.

"Wherefore, having fully answered, respondent prays that relator's petition be dismissed and that he may go hence without day with his costs."

To this answer the relator filed a reply which reads as follows:

"Now comes the Board of Education of the Plain Local School District, Stark County, Ohio, the relator in this action, and for its reply to the answer of respondent denies each and every averment made and allegation contained therein, except those as admit the truth of relator's petition.

"Therefore, relator, having fully replied, renews its prayer that it be issued a peremptory writ of mandamus by this court, commanding respondent to comply with the provisions of the aforesaid bond resolution and of Sections 133.33 and 133.35 of the Revised Code of Ohio, by certifying a copy of said resolution to said county auditor and causing said bonds to be advertised for public sale and receiving bids for the purchase of such bonds, in accordance with such advertisement, and relator further renews its prayer for all other and further relief to which the relator may be entitled."

The matter was submitted to this court without argument, upon the pleadings, the stipulation and the exhibits.

The facts in this case, as shown by the pleadings, stipulation and exhibits are substantially as follows:

The relator adopted a resolution determining to submit to the electors of the school district at the general election to be held on November 2, 1954, the question of issuing bonds in the sum of $1,670,000 for the purpose of purchasing land, constructing and equipping a fireproof high school building and constructing and equipping additions of 16 classrooms to existing elementary schools.

It is conceded by both parties to this action that all the proceedings relative to this bond issue were regular and in accordance with law, until the notice of election. The writer of this opinion has looked over the record of such proceedings, and this court is of the opinion that such proceedings are regular and in accordance with law, up until the time of the notice of the election.

The notice of election was published for four consecutive weeks, beginning September 29, 1954, and through some error or inadvertence the amount of the average annual tax levy expressed in mills for each one dollar of valuation and a portion of the purpose of the issue were omitted, and the amount of the average annual tax levy expressed in cents for each one hundred dollars of valuation was stated as being three and two-tenths cents, rather than thirty-two cents. However, we will discuss this situation later.

The ballot used in the election is as follows:

"Official

"Questions and Issues Ballot

"Plain Local School District

"

Proposed Bond Issue

(A 55% Majority vote is required for passage)

(Vote Ballot With an X)

"Shall bonds be issued by the Plain Local School District for the *purpose of purchasing land, constructing and equipping a fireproof high school building, and constructing and equipping additions of 16 classrooms to present elementary schools,* in the sum of $1,670,000.00 and a levy of taxes be made outside of the ten mill limitation, estimated by the County Auditor to average three and two-tenths (3.2) mills for each one dollar of valuation, *which amounts to thirty-two cents ($0.32) for each one hundred dollars of valuation,* for a maximum period of 20 years to pay the principal and interest of such bonds.

"

| : | : | FOR THE BOND ISSUE | : |
| : | : | | : |
| : | : | | : |

| : | : | AGAINST THE BOND ISSUE | : |
| : | : | | : |
| : | : | | : |

"

An election was held and the total number of votes cast on the question was 7,053, of which 4,811 were cast for the bond issue and 2,242 against the bond issue. The result of the election was certified by the board of elections to the relator, the Auditor of Stark County, and to the Department of Taxation of the State of Ohio.

In a news article appearing in the Canton Repository, a newspaper of general circulation in the school district, on August 5, 1954, under a heading titled, "33 Tax Issues Certified to Election Board for November 2 Ballots," Plain Township was mentioned, and there was set forth in the item the purpose, maturity and amount of the proposed bond issue, and the estimated average additional millage necessary to service these bonds, to wit, 3.2 mills. A true and correct copy of the pertinent portion of this news item is footnoted as exhibit A[1]. Also, footnoted as exhibit B[2], is a true and correct copy of a news item appearing in The Sun, a newspaper of general circulation in the school district, on August 11, 1954, relating to the certification of two school bond issues to the Stark County Board of Elections, in which there is set forth the purpose, amount and maturity of the proposed bond issue of the school district, together with the estimated average additional tax rate expressed in mills, to wit, 3.2 mills.

In an article appearing in the Canton Repository of September 10, 1954, there were listed bond issues which had received the requisite approvals of the Ohio Department of Taxation and the Department of Education. One such issue was the $1,670,000 of bonds proposed by the Board of Education of the Plain Local School District. Footnoted as exhibit C[3], is a

[1]Exhibit A. "Plain Township—3.2 mills for 20 years to raise $1,670,000 for a new high school and the addition of 16 classrooms to present elementary schools. Fifty-five per cent vote required."

[2]Exhibit B. "Plain Township voters will be asked to approve a bond issue of 3.2 mills for 20 years to raise $1,670,000 for a new high school and the addition of 16 classrooms to present elementary schools. A fifty-five per cent vote is needed for it to pass."

[3]Exhibit C. "Bond issues which amount to more than 6 per cent of the districts' property valuation and which have been approved by both the state board of tax appeals and Ohio Department of Education are:

"1. Plain Township Local School District, $1,670,000 for buying land, building and equipping a new school and for constructing and equipping 16 classrooms to present elementary schools."

true and correct copy of the pertinent part of such article, wherein is set forth the amount and entire purpose of the proposed issue. Footnoted as exhibit D', is part of a news item in The Sun of October 20, 1954, under the caption, "Proposals to be submitted to voters November 2," in which there is set forth the full purpose of the issue, the amount and maturity of the proposed bonds, and the estimated average additional tax rate expressed in mills, to wit, 3.2 mills.

On October 26, 1954, the Canton Repository carried a feature story showing an artist's conception of the new high school and reciting, among other things, the amount of the proposed issue, its purpose, the maturity of the bonds and the estimated average additional tax rate, to wit, 3.2 mills, a true and correct copy of which is footnoted as exhibit E[5]. In its edition of October 31, 1954, the Canton Repository published a set of forms of ballots to be used at the forthcoming general election. One of the forms of ballot related to the proposed Plain Local School District bonds and set forth the complete purpose of the issue, the amount and maturity of the bonds and the estimated average additional tax rate expressed in mills for each dollar of valuation, to wit, 3.2 mills, as well as in cents for each one hundred dollars of valuation, to wit, 32 cents. A true and correct copy of such form of ballot appears *supra*.

Such bond issue was fully and completely advertised in the school district, as shown by the exhibits.

With reference to the notice of election, we cite Section 133.11, Revised Code, which reads as follows:

---

[4]Exhibit D. "In Plain Township School District, the voters are asked to approve a Bond Issue, the money to be used to purchase land, construct and equip a fireproof high school building and construct and equip additions to 16 class rooms to present elementary schools, the tax will average 3.2 mills, run for 20 years, and furnish approximately $1,670,000 for the work."

[5]Exhibit E. "Elimination of some of the worst overcrowding problems in the county and a high school for one of the largest township school districts in Ohio are the aims of a $1,670,000 bond issue which will be decided by the voters of Plain Township School District in the coming election.

"* * *

"Cost of the issue is set at three and two-tenths mills over 20 years. That estimate is calculated on a total assessed valuation of the property in the district which now is exceeded, according to school board members."

"Notice of the election shall be published in one or more newspapers of general circulation in the subdivision once a week for four consecutive weeks prior to the election. Such notice shall state the amount of the proposed bond issue, the purpose for which such bonds are to be issued, the maximum number of years during which such bonds shall run, and the estimated average additional tax rate, expressed in dollars and cents for each one hundred dollars of valuation as well as in mills for each one dollar of valuation, outside the limitation imposed by Section 2 of Article XII, Ohio Constitution, as certified by the county auditor."

The question before this court is whether there was a substantial compliance with this section of the Code by the relator.

On this question we cite *State, ex rel. Spitler, City Solr.*, v. *Beidleman, Aud.*, 96 Ohio App., 210, 121 N. E. (2d), 561, the syllabus of which is as follows:

"1. Unsubstantial irregularities in the proceedings of a municipality in inaugurating an election on a bond issue for public improvement, which irregularities do not prejudice anyone, will be disregarded.

"2. Where the council of a municipality by resolution provides for submission to the electors of the question of issuing bonds for improving the city's sewerage system and provides in such resolution for a tax levy outside the 10-mill limitation for retirement of such bonds over a 25-year maximum period, and where every material requirement of law in connection with such improvement proceedings was complied with except that the ballot prepared and submitted to the electors provided for a maximum retirement period of 30 years, and the issuance of such bonds is approved by a vote in excess of the majority provided by law, such misstatement in the ballot of the maximum maturity period of such bonds is not such departure from the statute as could mislead, deceive or confuse the electorate and does not invalidate the proceedings."

And at page 213:

"In the case of *State, ex rel. Bd. of Edn. of Springfield Local School Dist.*, v. *Maxwell*, 144 Ohio St., 565, 60 N. E. (2d), 183, it is stated in the second proposition of the syllabus:

" '2. The bond issue of a political subdivision, approved at

an election by more than the requisite percentage of electors voting thereon, will not be invalidated on the ground that the resolution of necessity passed under Section 2293-19, General Code, provided for a maximum maturity of 20 years, whereas the notice of the election and the ballots submitted provided for a tax levy covering a maximum period of 22.5 years.'

"In the opinion, Judge Zimmerman stated at page 569:

" 'It has been generally held that defects, variances and irregularities in the several steps relating to the issuance of bonds should be material, harmful or both before the proceeding may be successfully attacked. See 5 McQuillen on Municipal Corporations (2 Ed.), 363, 1025 and 1035, Sections 2035, 2263 and 2264. It has also been held that unsubstantial irregularities in the resolution of a political subdivision inaugurating an election on a bond issue which do not prejudice anyone will be disregarded, especially where the proposed bond issue as submitted was approved by considerably more than the requisite number of electors.' "

In *State, ex rel. Board of Edn. of Springfield Local School Dist.,* v. *Maxwell,* 144 Ohio St., 565, 60 N. E. (2d), 183, the syllabus is as follows:

"1. The terms of Section 2293-21, General Code, providing that the notice of an election on a proposed bond issue of a political subdivision shall be published in a newspaper of general circulation once a week for four consecutive weeks prior to the election, are sufficiently met where the notice is published once a week for four consecutive weeks but the first notice appeared slightly less than 28 days before the election.

"2. The bond issue of a political subdivision, approved at an election by more than the requisite percentage of electors voting thereon, will not be invalidated on the ground that the resolution of necessity passed under Section 2293-19, General Code, provided for a maximum maturity of 20 years, whereas the notice of the election and the ballots submitted provided for a tax levy covering a maximum period of 22.5 years."

And on page 567:

"Most of the cases hold that if there is *no* compliance with statutory provisions as to the giving of notice of an election pertaining to a bond issue, the election is rendered invalid.

*State, ex rel. Jackson,* v. *Board of County Commrs. of Fayette Co.,* 122 Ohio St., 456, 172 N. E., 154. However, where there is substantial compliance with the statutory requirements and there is nothing to indicate that the result of the election might have been different had there been full compliance, the election will not be invalidated. *City of Cincinnati* v. *Puchta, Mayor,* 94 Ohio St., 431, 115 N. E., 278; 43 American Jurisprudence, 340, Section 86; 119 A. L. R., 661 *et seq.,* annotation."

In *Conley, a Taxpayer,* v. *City of New Boston,* 26 Ohio Opinions, 71, 11 Ohio Supp., 91, it is held:

"1. Where the notice of a special election was published for four times weekly, but the entire period of four weeks after the first publication did not elapse before the election was held, the election was not invalidated.

"2. The fact that the published notice of election and also the information printed on the ballot contained a correct estimate of the tax levy as to the number of mills on the dollar, but an incorrect estimate of the number of cents on each one hundred dollar valuation, did not invalidate the election and the bond issue, particularly where the electors were not deceived or misled, and the proposition carried by an overwhelming majority."

And in *Mehling* v. *Moorehead,* 133 Ohio St., 395, 403, 14 N. E. (2d), 15, it is held:

"Where bonds are to be issued or taxes levied, certain steps in the procedure are conditions precedent to taxing property owners. The failure to take such steps is necessarily fatal. On the other hand, where there is an absence of fraud, a substantial compliance with the statute, and the voters are not misled, the will of the electorate should not be set aside in the selection of the officials of a community. Every reasonable intendment must be in favor of the validity of an election, and against holding it void for uncertainty. *State, ex rel. Atty. Gen'l,* v. *Cogswell,* 8 Ohio St., 620, 628."

The purpose of a notice of election is to inform the voters. It is the theory of this court that such notice does not necessarily need to be a paid advertisement.

There is no question that the ballot was not legal in every respect. In a consideration of that fact, in looking over all the

exhibits relative to the notice of the election, there was, in our opinion, a substantial compliance with the provisions of the Code governing such notice. It is apparent, therefore, that the voters of Plain Township fully understood the purpose of the bond issue, the levy that was to be made, and the school house and class rooms that were to be built; and the irregularities in the proceedings were such that they do not prejudice or harm anyone.

In conclusion, for the reasons herein stated, it is our opinion that the legislation relative to the issuance of these bonds was valid and, for that reason, the writ of mandamus as prayed for by relator is allowed.

*Writ allowed.*

MONTGOMERY, P. J., concurs.
PUTNAM, J., not participating.