OPINION
{¶ 1} Appellant Della Bratton ("appellant") appeals the decision of the Morgan County Court of Common Pleas that granted summary judgment in favor of Appellees Gary Woodward, David Hooper, Phillip Horner, Ronald Grove, Ronald Moore, Bruce Dozer, Carl Dodrill and Morgan County ("County Appellees"). The trial court also granted summary judgment in favor of Appellees Morgan County MRDD, the Mary Hammond Adult Activity Center, Inc. ("MHAAC"), David Couch and Gilbert Melragon ("MRDD Appellees"). The following facts give rise to this appeal.
 {¶ 2} On December 10, 2001, appellant filed a complaint seeking declaratory and equitable relief, as well as restitution for sums paid or collected as a result of the passage of tax levies in Morgan County. Between 1996 and 2001, the MRDD Appellees were involved in tax levies for the purpose of furthering, facilitating, operating and funding programs and activities for mentally retarded and/or developmentally handicapped persons involved with MRDD Appellees. Appellant claims the County and MRDD Appellees included the words "Mary Hammond" on the 1996[1] and 2001[2] ballot, which the community understands to mean the adult workshop, in order to pass the levies. Appellant further alleges that funds from these two levies did not go exclusively to the workshop, but instead went to the operation of the Morgan County MRDD.
 {¶ 3} Appellant's initial complaint set forth six causes of action. On February 5, 2002, MRDD Appellees filed a motion to dismiss the complaint in its entirety. On September 25, 2002, the trial court granted said motion. Appellant appealed to this Court and we affirmed in part, reversed in part, and remanded the matter to the trial court. SeeBratton v. Couch, et al, Morgan App. No. CA02-012, 2003-Ohio-3743. Upon remand, appellant's claims were as follows: (1) an alleged violation of R.C. 2923.34 (Ohio Corrupt Practices Act) as to the 1996 and 2001 tax levies; (2) an alleged violation of R.C. 2723.01 (illegal levy or collection of taxes); and alleged fraud and misrepresentation.
 {¶ 4} Upon remand, MRDD and County Appellees both moved for summary judgment. The trial court granted appellees' respective motions. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 5} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE EXTENT, IF ANY, THE COUNTY DEFENDANT'S SUMMARY JUDGMENT ARGUMENTS AS TO THE STATUE (SIC) OF LIMITATIONS OR IMMUNITY WERE CONSIDERED IN GRANTING THEIR MOTION.
 {¶ 6} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO THE COUNTY DEFENDANTS SINCE THEIR MOTION FAILED TO SATISFY THE INITIAL OR ULTIMATE BURDEN IMPOSED ON THEM BY CIV.R. 56.
 {¶ 7} "III. MATERIAL QUESTIONS OF FACT AND THE BENEFIT OF REASONABLE INFERENCES FROM THOSE FACTS PRECLUDED SUMMARY JUDGMENT ON MS. BRATTON'S CORRUPT PRACTICES ACT CLAIMS."
 Summary Judgment Standard {¶ 8} Our standard of review is de novo, and as an appellate court, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35. Accordingly, an appellate court must independently review the record to determine whether summary judgment was appropriate, and we need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412.
 {¶ 9} Civ. R. 56(C) provides:
 {¶ 10} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only [therefrom], that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 11} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107.
 I {¶ 12} In her First Assignment of Error, appellant maintains the trial court erred if it considered County Appellees' summary judgment arguments regarding the statute of limitations or immunity issues in granting their motion for summary judgment because these issues were previously addressed by this Court in appellant's first appeal.
 {¶ 13} Specifically, appellant contends County Appellees again asserted immunity and statute of limitations arguments in their motion for summary judgment. Appellant argues County Appellees were barred from raising these issues following the first appeal of this matter. In the first appeal, we determined appellant's Corrupt Practices Act claims as to the 1996 tax levy were not time barred; that none of her claims as to the 2001 tax levy were time barred; and that neither the County nor the MRDD Appellees had immunity from suit.
 {¶ 14} In its judgment entry granting County Appellees' motion for summary judgment, we cannot determine whether the trial court considered the immunity and statute of limitations issues. The trial court merely stated in its judgment entry that County Appellees were entitled to summary judgment:
 {¶ 15} "* * * [A]fter construing the evidence most strongly in favor of the non-moving party and having determined that there is no genuine issue as to any material fact and further that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made * * * Judgment Entry, Nov. 9, 2005, at 1.
 {¶ 16} In Nolan v. Nolan (1984), 11 Ohio St.3d 1, the Ohio Supreme Court explained the doctrine of the law of the case mandates that lower courts apply the law as determined by appellate courts on legal questions involved for all subsequent proceedings at both the trial and reviewing levels. We find no evidence, in the record, that the trial court reconsidered the issues of immunity and the statute of limitations or failed to follow the law of the case regarding these issues.
 {¶ 17} Appellant's First Assignment of Error is overruled.
 II {¶ 18} Appellant maintains, in her Second Assignment of Error, the trial court erred when it granted summary judgment on behalf of County Appellees because their motion failed to satisfy the initial or ultimate burden imposed on them by Civ. R. 56. We disagree.
 {¶ 19} In her brief, appellant argues County Appellees failed to satisfy their initial burden under Civ. R. 56. This initial burden required County Appellees to inform the trial court of the basis for their motion and identify those portions of the record that demonstrated the absence of a genuine issue of material fact. In doing so, County Appellees were required to specifically point to some evidence that demonstrated appellant could not support her claim. Appellant claims County Appellees' motion for summary judgment was supported only by generalized, conclusory, and unsupported allegations that appellant lacked evidence to support her claims. Appellant further maintains County Appellees pointed to no specific evidence, in the record, to affirmatively demonstrate that no genuine issues of material fact existed.
 {¶ 20} Having reviewed the record in this matter, we conclude County Appellees met their burden by submitting the deposition testimony of David Couch, the superintendent of Appellee Morgan County MRDD Board, and Scott Roberts, the production manager for Appellee Morgan County MRDD Board. The testimony contained in these depositions explains the relationship between Appellee Morgan County MRDD Board and Appellee MHAAC. Mr. Roberts testified that Appellee Morgan County MRDD Board provides administrative staffing and supervision at Appellee MHAAC. Depo. Scott Roberts at 26. Further, all of the funds collected by the levies went to Appellee Morgan County MRDD Board in accordance with the ballot language. Appellee MHAAC received no funds from the tax levies. Id. at 25-26.
 {¶ 21} Pursuant to Civ. R. 56, once County Appellees explained the relationship between Appellee Morgan County MRDD Board and Appellee MHAAC and how the funds received from the levies were used by Appellee Morgan County MRDD Board, for the benefit of Appellee MHAAC, the burden shifted to appellant to set forth evidence in support of her allegations contained in the complaint. Appellant was not able to meet this burden and did not set forth any evidence to support her claim that the 1996 and 2001 ballot language was misleading. Accordingly, the trial court properly granted County Appellees' motion for summary judgment.
 {¶ 22} Appellant's Second Assignment of Error is overruled.
 III {¶ 23} In her Third Assignment of Error, appellant contends the trial court erred when it granted summary judgment on behalf of MRDD and County Appellees on her Corrupt Practices Act claims. We disagree.
 {¶ 24} Prior to addressing the merits of this assignment of error, we note that MRDD Appellees indicate, in their brief, that appellant has not appealed her claims as to the 2001 tax levy and that she "* * * has abandoned her position that the MRDD Defendants [Appellees] engaged in any type of fraud or misrepresentation relative to the 2001 Levy * * *." Brief of MRDD Appellees, Mar. 31, 2006, at 18.
 {¶ 25} In support of this conclusion, MRDD Appellees rely upon the following language contained in appellant's memorandum in opposition to their motion for summary judgment, wherein appellant stated: "* * * [A]fter the benefit of discovery and a more thorough production of public records, plaintiff [appellant] now agrees that the 2001 ballot language and its stated purpose should not have misled or defrauded a reasonable voter." Memorandum in Opposition to MRDD Appellees' Motion for Summary Judgment, June 27, 2005, at 19. In her reply brief on appeal, appellant denies that she abandoned her Corrupt Practices Act claims as to the 2001 levy.
 {¶ 26} We agree with MRDD Appellees that appellant abandoned her Corrupt Practices Act claims as to the 2001 levy. In her appellate brief, appellant does not mention the 2001 levy, in her Third Assignment of Error, except to state that the collection of the proceeds of the 2001 levy constituted the collection of an illegal and void debt. Appellant's Brief, Feb . 15, 2006. Appellant fails to set forth any argument, in her Third Assignment of Error, to support her claim that the collection of funds from the 2001 levy violated the Corrupt Practices Act. Further, we agree with MRDD Appellees that appellant abandoned her Corrupt Practices Act claims as to the 2001 levy when she conceded that the ballot language should not have misled or defrauded a reasonable voter. As such, we will address appellant's Third Assignment of Error only as it pertains to the 1996 levy.
 {¶ 27} Appellant's Corrupt Practices Act claims are based upon R.C. 2923.32, which provides, in pertinent part:
 {¶ 28} "(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."
 {¶ 29} Further, R.C. 2923.34 provides that:
 {¶ 30} "(B) Any person who is injured or threatened with injury by a violation of section 2923.32 of the Revised Code may institute a civil proceeding in an appropriate court seeking relief from any person whose conduct violated or allegedly violated section 2923.32 of the Revised Code or who conspired or allegedly conspired to violate that section, * * *."
 {¶ 31} The term "corrupt activity" "* * * means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * a violation of R.C. 2923.32." R.C. 2923.31 (I)(2)(a). A "pattern of corrupt activity" is defined as "* * * two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).
 {¶ 32} Appellant sets forth several arguments in support of this assignment of error. First, appellant maintains the 1996 levy is void ab initio because the resolution that authorized the levy incorrectly referenced R.C. 5705.221 as its legal authority when in fact, the correct statutory citation should have been R.C. 5705.222. It is important to note that this error occurred in the authorizing resolution and not the ballot itself.
 {¶ 33} The Fourth District Court of Appeals as well as this district has addressed the issue of misinformation on a ballot. In State ex rel.Bd. of Edn. Southeastern Local School Dist. Ross Cty. v. Allen (1955),102 Ohio App. 315, an incorrect figure for the average annual tax levy of 3.5 mills per dollar to pay the principal and interest on school district bonds was carried in the text of the published notice of election and on the face of the ballot instead of the correct figure of 4.2 mills per dollar. Id. at 316. Despite this clerical error, the court of appeals concluded the error did not invalidate the bonds.
 {¶ 34} In reaching this conclusion, the court of appeals cited the Ohio Supreme Court case of State ex rel. Bd. of Edn. of SpringfieldLocal School Dist., Summit Cty. v. Maxwell (1945), 144 Ohio St. 565,569, wherein the Court explained:
 {¶ 35} "It has been generally held that defects, variances and irregularities in the several steps relating to the issuance of bonds should be material, harmful or both before the proceeding may be successfully attacked. * * * It has also been held that unsubstantial irregularities in the resolution of a political subdivision inaugurating an election on a bond issue which do not prejudice anyone will be disregarded, especially where the proposed bond issue as submitted was approved by considerably more than the requisite number of electors."
 {¶ 36} Thus, the Fourth District Court of Appeals concluded the test was whether the voters were misled by the mistake. State ex rel. Bd. ofEdn. Southeastern Local School Dist. Ross Cty. v. Allen, supra, at 317. To determine this, "* * * it is proper to consider the degree of the error, the nature of the calculation and the closeness of the vote." Id. The court further noted that "[t]he burden is on the one claiming that the affirmative result of a bond issue election was affected by a misleading statement in the notice of election amounting to no more than an irregularity, to establish that the result of the election was affected by such statement." Id. at 318, citing Anselmi v. City of RockSprings, 53 Wyo. 223. In applying this test, the Fourth District Court of Appeals found that the slight clerical defect in the notice of election and on the ballot was not sufficient to invalidate the bonds. Id. at 318.
 {¶ 37} In State ex rel. Thomas v. Conkle (Mar. 30, 1978), Holmes App. No. CA 308, we addressed the issue of whether a resolution authorizing the placing of a tax levy on the ballot for the purpose of providing and maintaining roads, road construction, and maintenance equipment in the amount of two mills was misleading because it was presented as a renewal levy when in fact it was not. Id. at 1. In concluding that the levy was misleading, this Court explained the language of the levy materially and substantially misled the voters and violated R.C. 5705.25 because it was described on the ballot as a renewal rather than an additional levy. Id. at 3.
 {¶ 38} In the case sub judice, we conclude the clerical error contained in the authorizing resolution citing the incorrect statute of the Ohio Revised Code did not misled the voters of Morgan County. The error was minor and did not appear on the ballot. Further, the voters of Morgan County passed the levy by a margin of two to one. Finally, we note that appellant has failed to present any evidence that the result of the election was affected by the clerical error.
 {¶ 39} Second, appellant argues the language of the 1996 levy renders it void ab initio. Specifically, appellant challenges the language that seeks passage to support "* * * operation of the Mary Hammond Program for citizens of Morgan County who are mentally retarded and/or developmentally disabled * * *." Based upon this language, appellant claims she believed the funds, from the 1996 levy, were to benefit Appellee MHAAC. However, appellant argues Appellee MHAAC was not the beneficiary of the 1996 levy funds and therefore, the levy language was misleading.
 {¶ 40} As discussed previously, at his deposition, Scott Roberts, the production manager for Appellee MHAAC, testified about the relationship between Appellee MHAAC and MRDD Appellees. Mr. Roberts explained that MRDD Appellees provide support to Appellee MHAAC through staffing and supervision. Depo. Scott Roberts at 26. No other funds are directed to Appellee MHAAC. Id. The 1996 levy indicated that it was to benefit the "operation" of Appellee MHAAC, which it in fact did because funds from the levy went to MRDD Appellees so it could operate Appellee MHAAC by providing staffing and supervision. Because the funds were used by MRDD Appellees to operate Appellee MHAAC, we find nothing misleading in the language contained in the 1996 levy ballot.
 {¶ 41} Third, appellant contends MRDD Appellees conspired to engage in corrupt activity, under the 1996 levy, by not distributing and/or appropriating Appellee MHAAC public funds intended for it. Appellant also alleges MRDD Appellees appropriated, expended and authorized payment and expenditure of public monies to and by Appellee MHAAC in the absence of valid contracts. The evidence presented by MRDD Appellees establishes that it is the authorized agent for the receipt of resources necessary for the operation of the programs and services at Appellee MHAAC. Thus, the funds received by MRDD Appellees, from the 1996 levy, and used for the operation of Appellee MHAAC was done so in compliance with the language of the levy.
 {¶ 42} As to the issue of valid contracts, it should first be noted that Scott Roberts testified, at his deposition, that no funds were transferred from MRDD Appellees to Appellee MHAAC. Depo. Scott Roberts at 25, 26. The only funds provided by MRDD Appellees to Appellee MHAAC were for direct services such as lawn care and maintenance. Id. at 26. Appellant presented no evidence to support her claim that Appellee MHAAC appropriated and expended public funds, from the 1996 levy, in the absence of valid contracts.
 {¶ 43} Fourth, appellant maintains the evidence of corrupt activity can be found in MRDD Appellees' assignment of levy funds to Morgan County Auditor's special Fund 017. This fund was previously labeled "Mary Hammond School" and later renamed "MR/DD." Appellant alleges wrongdoing as a result of the name change. However, R.C. 5705.091
specifically mandates that the proceeds of levies for the benefit of county boards of mental retardation and developmental disabilities "* * * shall be deposited to the credit of the county mental retardation and developmental disabilities general fund."
 {¶ 44} Further, appellant presented no evidence that monies in Fund 017 were used for any purpose other than to assist mentally retarded and/or developmentally disabled citizens of Morgan County. There is also no evidence of a conspiracy to defraud appellant of tax dollars or otherwise engage in corrupt activities relative to Fund 017 simply by changing the name of the fund. Based upon the above, we find the trial court properly granted summary judgment on behalf of MRDD Appellees and County Appellees on appellant's Corrupt Practices Act claims.
 {¶ 45} Appellant's Third Assignment of Error is overruled.
 {¶ 46} For the foregoing reasons, the judgment of the Court of Common Pleas, Morgan County, Ohio, is hereby affirmed.
Wise, P. J., Gwin, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morgan County, Ohio, is affirmed.
Costs assessed to Appellant.
[1] The ballot language for the 1996 levy stated as follows: "A renewal of a tax for the benefit of Morgan County for the purpose of OPERATION OF THE MARY HAMMOND PROGRAM FOR CITIZENS OF MORGAN COUNTY WHO ARE MENTALLY RETARDED AND/OR DEVELOPMENTALLY DISABLED at a rate not exceeding one and four tenths (1.4) mills for each one dollar of valuation, which amounts to fourteen cents ($0.14) for each one hundred dollars of valuation, for a period of five (5) years, commencing with the tax year 1997, and for the years 1998, 1999, 2000 and 2001."
[2] The ballot language for the 2001 levy stated as follows: "An additional tax for the benefit of Morgan County for the purpose of THE OPERATION OF PROGRAMS AND SERVICES AND FOR THE ACQUISITION, CONSTRUCTION, RENOVATION, FINANCING, MAINTENANCE, AND OPERATION OF THE MENTAL RETARDATION AND DEVELOPMENTAL DISABILITY FACILITIES BY THE MORGAN COUNTY BOARD OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, ALSO KNOWN AS THE MARY HAMMOND PROGRAMS at a rate not exceeding one and ninety-seven hundredths (1.97) mills for each one dollar of valuation, which amounts to nineteen and seven-tenths cents ($0.197) for each one hundred dollars of tax valuation, for a period of five (5) years, commencing in 2002, first due in calendar year 2003."